William Neal MOORE,
Petitioner-Appellant,

v.

Walter D. ZANT, Respondent-Appellee.

No. 84–8423.

United States Court of Appeals,
Eleventh Circuit.

June 4, 1984.

Opinion on Rehearing En Banc June
20, 1984.

Tony L. Axam, Atlanta, Ga., Daniel J. Givelber, Boston, Mass., G. Terry Jackson, Savannah, Ga., John Charles Boger, New York City, for petitioner-appellant.

Susan V. Boleyn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before FAY, VANCE and KRAVITCH, Circuit Judges.

BY THE COURT:

This matter was presented to us upon the appellant's motion for stay of execution, the appellee's motion for expedited review and the appellee's motion to dismiss the appeal. With the execution of appellant scheduled for 12:15 a.m. on May 24, 1984, the court entered a stay in order that

an expedited hearing could be held. This was accomplished during the afternoon of May 24, 1984 in Atlanta, Georgia.

Having heard oral argument, reviewing briefs of counsel and studying the record, we affirm the judgment denying relief. Finding ourselves in complete agreement with the evaluation of the issues, the authorities cited as controlling and the conclusions made by the district judge in his Order of May 22, 1984, we adopt the same and append it hereto. The stay previously entered is hereby vacated.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

WILLIAM NEAL MOORE,
 Petitioner
VS.
WALTER D. ZANT, WARDEN,
GEORGIA DIAGNOSTIC AND
CLASSIFICATION CENTER,
 Respondent

## ORDER

Before the Court is the petition of William Neal Moore for a Writ of Habeas Corpus and an Order staying his execution by the State of Georgia.

### I. *Background*

Petitioner murdered Fredger Stapleton in Stapleton's home during the course of an armed robbery on April 2, 1974. He waived trial by jury in the Superior Court of Jefferson County on June 4, 1974, and pleaded guilty to all charges. Judge McMillan sentenced Moore to death on July 17, 1974. Thereafter, Petitioner embarked on a ten-year trek through the state and federal court systems, seeking relief from his conviction and sentence.

The Georgia Supreme Court affirmed Moore's conviction and sentence in February, 1975, and later denied his petition for a rehearing. *Moore v. State*, 233 Ga. 861, 213 S.E.2d 829 (1975). The United States Supreme Court also denied review. *Moore v. Georgia*, 428 U.S. 910, 96 S.Ct. 3222, 49 L.Ed.2d 1218 (1976), *petition for reh'g de-*nied, 429 U.S. 873, 97 S.Ct. 190, 50 L.Ed.2d 154 (1976). Petitioner thereafter sought a declaratory judgment in State court, wherein he sought a new sentencing proceeding. Relief was denied and the denial was affirmed by the Georgia Supreme Court. *Moore v. State*, 239 Ga. 67, 235 S.E.2d 519 (1977), *cert. denied*, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977).

Petitioner's first trip through the state habeas process resulted in no relief. *Moore v. Hopper*, CV78–22 (Sup.Ct. Tattnall Cty.1978). On October 17, 1978, the Georgia Supreme Court denied Moore's application for certificate of probable cause to appeal that decision.

Petitioner sought federal habeas relief in this Court in 1978. His first petition was voluntarily dismissed without prejudice after the Georgia Supreme Court granted a stay of execution. The execution was rescheduled for December 4, 1978. Moore again sought relief in this Court on November 22, 1978. At that time, he was again granted a stay of execution to permit this

Court's consideration of his legal arguments supporting his grounds for relief.

This Court concluded that Moore's guilty plea was voluntarily, intelligently, and knowingly made. The Court further concluded that he was aware of his right to withdraw his guilty plea when he chose otherwise and that the absence of a transcript of closing arguments at his sentencing hearing did not prevent adequate appellate review.

This Court did conclude, however, that certain constitutional mandates were not observed in the state's appellate review of the sentencing. *Moore v. Zant*, 513 F.Supp. 772, 818 (S.D.Ga.1981). More specifically, that the imposition of the death penalty was based primarily on the location of the killing—at the victim's home—and not on the presence of the aggravating circumstances (that Moore committed malice murder while in the commission of another capital crime, armed robbery) articulated in the trial judge's order. The Georgia Supreme Court, which was bound by state statute to perform a proportionality review, failed to compare cases involving a killing in the home. Since that court violated its statutory duty to review similar cases by focusing on cases involving different circumstances, this Court undertook an independent proportionality review and concluded that the death penalty "shocked the conscience," warranting habeas relief.

On appeal, the Eleventh Circuit panel reversed this Court's judgment, concluding that an independent proportionality review should not have been conducted. The panel also concluded, however, that the state trial court had committed constitutional error in imposing the death sentence on the basis of nonstatutory aggravating circumstances. *Moore v. Balkcom*, 716 F.2d 1511 (11th Cir.1983). The respondent filed a suggestion for rehearing *en banc* on the latter portion of the panel decision. The petition was granted and the panel decision was withdrawn for *en banc* consideration. Citing *Zant v. Stephens*, —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (narrowing function of statutory aggravating factors is achieved when a death sentence is supported by at least one of the statutory aggravating circumstances), the *en banc* court reversed that portion of the panel decision granting habeas corpus relief. *Moore v. Balkcom*, 716 F.2d 1511 (11 Cir. 1983).

On petition for rehearing and suggestion for rehearing *en banc*, Moore argued that while the Georgia Supreme Court considered all mitigating circumstances, the sentencing judge limited his consideration to a finding that Moore had made true statements and had cooperated with the authorities. Moore further argued that Judge McMillan "viewed the death sentence as mandatory in this case and did not understand that he possessed discretion to impose a life sentence. *Moore v. Balkcom*, 722 F.2d 629 (11th Cir.1983). The Eleventh Circuit panel concluded that there was no basis in the record in the case to support either of these arguments. The suggestion for rehearing *en banc* was denied. *Id.*, at 630.

Once again Moore petitioned the United States Supreme Court for review and once again it was denied. *Moore v. Balkcom*, —— U.S. ——, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984).

Moore again instituted state habeas proceedings on May 11, 1984. On May 18, 1984, the Superior Court of Butts County, Georgia, dismissed the petition as successive within the meaning of O.C.G.A. § 9–14–51. The Georgia Supreme Court denied review on the same day. That afternoon, Moore filed for federal habeas relief in this court. Execution is scheduled for May 24, 1984. Consideration of his application for a stay of execution must therefore be made "within the shadow of the date and time set for execution." *Stephens v. Kemp*, —— U.S. ——, ——, 104 S.Ct. 562, 562, 78 L.Ed.2d 370, 372 (1983) (dissenting opinion).

## II. *Conclusion*

Petitioner has presented nine grounds for relief:

1) The State failed to inform petitioner of his right to remain silent and of his right to counsel prior to a custodial interrogation performed for the purpose of gathering relevant sentencing information.

2) Petitioner was sentenced on the basis of materially false and misleading information contained in the presentence report.

3) The sentencing judge relied in part on a presentence report to which neither petitioner nor his counsel were afforded a meaningful opportunity of review.

4) The false and misleading information in the presentence report violated the mandate of *Proffitt v. Wainwright*, 685 F.2d 1227 (11th Cir.1982), *modified*, 706 F.2d 311 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983), insofar as the information was not presented in open court, by sworn witnesses subject to cross-examination.

5) The presentence report defects prevented petitioner from obtaining a meaningful appellate review in violation of his Eighth and Fourteenth Amendments.

6) Petitioner's death sentence is excessive and disproportionate under the Eight and Fourteenth Amendments since it was imposed despite his repeated and uncontradicted denial of any intent to kill the victim. *See Enmund v. Florida*, 458 U.S. 782, 798, 102 S.Ct. 3368, 3377, 73 L.Ed.2d 1140 (1982).

7) Petitioner is an indigent black man convicted of the murder of a black man. His sentence and execution therefore will be arbitrary and unconstitutional in light of the State's alleged practice of discriminating on the basis of race of both the victim and the defendant. *See Spencer v. Zant*, 715 F.2d 1562 (11 Cir.1983), *vacated for reh'g en banc*, 715 F.2d 1562 (1983); *McCleskey v. Zant*, 580 F.Supp. 338 (N.D.Ga.1984), *app. pending*, 729 F.2d 1293, No. 84–8176 (to be argued before 11th Cir., *en banc*, in June, 1984); *Ross v. Hopper*, 716 F.2d 1528 (11th Cir. 1983), *vacated for reh'g en banc*, 729 F.2d 1293 (11th Cir.1984).

8) Petitioner received ineffective assistance of counsel during the sentencing phase before the trial court.

9) Since the sentencing judge expressly relied on the prospect of appellate review or the United States Supreme Court's invalidation of Georgia's capital statutes, it attached diminished consequences to the sentence of death as imposed and thus took less than full responsibility for the sentencing decision in violation of petitioner's Eighth and Fourteenth Amendment right.

■ Respondent has pleaded abuse of the writ, shifting to petitioner the burden to prove by a preponderance of the evidence that he has not engaged in that conduct. *Stephens v. Kemp*, 721 F.2d 1300, 1303 (11th Cir.), *reh'g en banc denied*, 722 F.2d 627 (11th Cir.), *application for stay granted*, —— U.S. ——, 104 S.Ct. 562, 78 L.Ed.2d 370 (1983); *Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1947); *Jones v. Estelle*, 722 F.2d 159, 164 (5th Cir.1983). Under the Rules Governing Section 2254 Cases in the United States District Courts, (hereafter, 28 foll. § 2254),

> [a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b). "The doctrine of abuse of the writ has developed as a result of the familiar rule of law that a denial of an application for habeas corpus is not *res judicata* with respect to subsequent applications." *Potts v. Zant*, 638 F.2d 727, 738 (5th Cir. Unit B 1981) citing *Sanders v. United States*, 373 U.S. 1, 7, 83 S.Ct. 1068, 1072, 10 L.Ed.2d 148 (1963).

Because of the inapplicability of *res judicata* to habeas corpus, prisoners have in the past frequently filed successive petitions, alleging claims already adequately determined in prior petitions, *or*

*alleging different claims which could have been adequately pleaded and adjudicated in prior petitions.* In order to curb the opportunity for prisoners to file nuisance or vexatious petitions, and to ease the burden on the courts arising from such petitions, guidelines have evolved as to when a district court, in the exercise of its sound judicial discretion, may decline to entertain on the merits a successive or repetitious petition. These guidelines reflect a concern that in the absence of abuse, a federal district court will adjudicate at least once the claims of a petitioner.

*Potts,* at 738. (Emphasis added). *See also Fay v. Noia,* 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963).

The *Sanders* court divided into two categories successive applications for habeas relief. The first classification specified the principles governing successive motions based on grounds previously addressed by the habeas courts. The second classification includes both those successive applications that assert grounds different from those presented in a prior application, along with those that assert grounds presented earlier but not adjudicated on the merits.

Regarding the first classification, a federal court may give controlling weight ... to denial of a prior application for federal habeas ... relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant to the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Smith v. Kemp,* 715 F.2d 1459, 1468 (11th Cir.1983), *application to vacate stay denied,* —— U.S. ——, ——, 104 S.Ct. 19, 55, 77 L.Ed.2d 1414, 1446, —— U.S. ——, 104 S.Ct. 55, 78 L.Ed.2d 74 (1983), citing *Sanders,* 373 U.S. at 15, 83 S.Ct. at 1077; *cert. denied,* —— U.S. ——, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983). In *Smith,* the Eleventh Circuit emphasized that

[i]n determining whether the "ends of justice" would be served by readdressing the merits of the same contention as raised in the prior petition, we must look at objective factors, such as whether this was a full and fair hearing with respect to the first petition and whether there has been an intervening change in the law. [cits]

*Id.*

▬ A district court may avoid full consideration of the merits regarding the second (new claims) classification only if there has been an abuse of the writ. In order to find an abuse of writ, the Court must find that presentation of wholly new issues resulted from 1) the intentional withholding or intentional abandonment of those issues on the initial petition, or 2) inexcusable neglect. *Stephens, supra,* 721 F.2d at 1303, citing *Potts v. Zant,* 638 F.2d 727, 740–41 (5th Cir. Unit B), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981); *see also Paprskar v. Estelle,* 612 F.2d 1003 (5th Cir.1980) *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). The Petitioner must show the absence of inexcusable neglect.

According to *Fay* [*v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) relied on by the *Sanders* court], a petitioner loses the right to have a claim considered on a successive petition if he "understandingly and knowingly forewent the privilege," 372 U.S. at 439 [83 S.Ct. at 849] [cits], of raising the claim in his initial petition. The bar "depends on the considered choice of the petitioner." *Id.* But note that the inquiry is not whether the petitioner intended to give up his right to have a claim heard at all. It is whether he withheld it without legal excuse when he filed his earlier petition.

*Jones v. Estelle,* 722 F.2d 159, 163 (5th Cir.1983). Withholding or failing to timely present a claim may be deemed to be an "abuse of the writ."

The "abuse of the writ doctrine should be governed by equitable principles." *Stephens, supra,* —— U.S. at ——, 104 S.Ct. at 563, 78 L.Ed.2d at 373; citing *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct.

1068, 1078, 10 L.Ed.2d 148 (1963). In *Sanders,* the court

noted that consideration of abuse normally is left to the 'discretion of federal trial judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits.'

*Stephens,* —— U.S. at ——, 104 S.Ct. at 563, 78 L.Ed.2d at 373, quoting *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078.

Thus, this Court should look to Petitioner's reasons for not having raised in his earlier petition the claims raised in support of his present petition, in addition to any claims previously raised and addressed and those raised but not addressed. Case law in this circuit indicates that this must be done in light of the fact that "[t]he 'abuse of the writ' doctrine is of rare and extraordinary application. *Paprskar v. Estelle,* 612 F.2d at 1007; *Hardwick v. Doolittle,* 558 F.2d 292, 296 (5th Cir.1977), *cert. denied,* 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 [cits] (1978); *Simpson v. Wainwright,* 488 F.2d 494, 495 (5th Cir. 1973); *see also Galtieri v. Wainwright,* 582 F.2d 348, 368 (5th Cir.1978) (*en banc*) (J. Goldberg, dissenting)." *Potts,* at 741 (footnote omitted). Accordingly,

[i]f a petitioner is able to present some 'justifiable reason' explaining his actions, reasons which 'make it fair and just for the trial court to overlook' the allegedly abusive conduct, the trial court should address the successive petition. *Price v. Johnston,* 334 U.S. 266 at 291 [68 S.Ct. 1049 at 1063, 92 L.Ed. 1356] [cits]; *Paprskar v. Estelle, supra.*

*Potts,* at 741.

These general principles boil down to the idea that a petitioner can excuse his omission of a claim from an earlier writ if he proves he did not know of the "new" claims when the earlier writ was filed. The inquiry is easily answered when the claim has been made possible by a change in the law since the last writ or a development in facts which was not reasonably knowable before.

*Jones v. Estelle,* 722 F.2d 159, 165 (5th Cir.1983) (footnotes omitted).

Regarding the "changes in the law" consideration, the *Jones* court acknowledged that "the Supreme Court in *Engle v. Isaac,* 456 U.S. 107 [102 S.Ct. 1558, 71 L.Ed.2d 783] (1982) [cits] charges a prisoner with a duty to anticipate changes at the pain of forfeiture under a state contemporaneous objection rule,[ ]" *id.,* at n. 5. The court expressly declined, however, to "define the scope of a petitioner's need to anticipate changes in the law or decide whether the *Engle* duty extends to a habeas petitioner attempting to explain omitted claims." *Id.*

The Jones court did emphasize that less solicitude should be given petitioners who, as in the instant case, were represented by counsel during earlier habeas proceedings. *See also Woodard v. Hutchins,* —— U.S. ——, —— n. 3, 104 S.Ct. 752, 753 n. 3, 78 L.Ed.2d 541, 544 n. 3 (1984).

Finally, despite the "rare and extraordinary application" of Rule 9(b) alluded to in *Potts,* it is apparent that a majority of the Supreme Court, faced with an irksome series of eleventh hour appeals, has underscored the necessity of the Rule.

A pattern seems to be developing in capital cases of multiple review in which claims that could have been presented years ago are brought forward—often in a piecemeal fashion—only after the execution date is set or becomes imminent. Federal courts should not continue to tolerate—even in capital cases—this type of abuse of the writ of habeas corpus.

*Woodard v. Hutchins,* —— U.S. ——, ——, 104 S.Ct. 752, 753, 78 L.Ed.2d 541, 545 (1984) (five Justices concurring in per curiam opinion); *see also Antone v. Dugger,* —— U.S. ——, 104 S.Ct. 962, 79 L.Ed.2d 147 (1984); *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983). Citing *Woodard,* the Eleventh Circuit recently barred an untimely insanity claim because of abuse or writ in *Goode v. Wainwright,* 731 F.2d 1482 (11th Cir. 1984).

Petitioner asserts that four of the above claims were not previously presented to this Court because they depend upon changes in the law occurring subsequent to the filing of his state and federal habeas petitions in 1978. He maintains, that a fifth claim depends on the independent development, since 1978, of facts that show a constitutional violation. Three other claims have been presented previously to this Court by Petitioner's former attorney in an amendment to his 1978 petition. Those claims were not considered because this Court declined to permit such amendment, granting relief on other grounds. The ninth claim, Petitioner asserts, "was not present previously because of conflicts between petitioner and his state habeas corpus counsel, and because of the unfamiliarity of that counsel with relevant facts and legal principles." Petition at 6.

Finally, where such procedural default principles are applicable, Petitioner must show cause and prejudice before this Court can consider his claims, even where abuse of writ is not evident. *See, e.g., Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Weber v. Israel,* 730 F.2d 499 (7th Cir.1984) (where state withholds right of appellate review of issues not raised at trial, federal courts will not undermine state's interest in orderly procedure by allowing defendant to litigate in federal habeas proceeding; federal habeas relief unavailable absent showing of cause and actual prejudice; *Smith v. Kemp,* 715 F.2d 1459, 1469 (11th Cir.1983); *Shriner v. Wainwright,* 715 F.2d 1452, 1458 (11th Cir. 1983).

The Court will therefore examine each claim for "abuse of writ" and waiver purposes and address those issues warranting treatment on the merits.

A. *The Estelle v. Smith Claim*

Petitioner argues that the state failed to inform him, while he was in custody, of his right to remain silent and of his right to counsel prior to questioning by a probation officer preparing a presentence report. He bases this claim on *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

In *Smith,* a court ordered the psychiatric examination of the defendant while he was in custody. Smith was not advised of his right to remain silent; nor was he told that any statement he made could be used against him at the ensuing sentencing hearing. Applying *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966) and *In Re Gault,* 387 U.S. 1, 52, 87 S.Ct. 1428, 1456, 18 L.Ed.2d 527 (1967), the court held that admission of the interviewing doctor's testimony at the sentencing phase of his trial violated Smith's Fifth Amendment privilege against compelled self-incrimination. The court further held that Smith's Sixth Amendment rights were violated, citing, *inter alia, Kirby v. Illinois,* 406 U.S. 682, 688–689, 92 S.Ct. 1877, 1881–1882, 32 L.Ed.2d 411 (1972). Finally, in *Battie v. Estelle,* 655 F.2d 692, 699 (5th Cir.1981) the court held that "*Smith* did not establish a new principle of federal constitutional law because that decision merely applied already fixed principles to a new factual situation[,]" thus warranting retroactive application.

Respondent argues that since *Smith* was merely an extension of existing constitutional law, Petitioner should have raised this claim in his earlier habeas petitions. In fact, Petitioner did raise in his first state habeas petition the contents of his presentence report, asserting that neither he nor his counsel had been afforded an adequate opportunity to review its contents and to explain or rebut it prior to sentencing. The first state habeas court found that Petitioner's attorney was furnished with a copy of the report in question and this Court declined to address the claim primarily on that ground. *Blake v. Zant,* 513 F.Supp. 772, 805 (S.D.Ga.1981). Therefore, Respondent argues, both the contents of the report and the report itself have been previously litigated. Further, according to Respondent, since no "new" changes in the law have occurred, and since previous litigation shows that Petitioner could have

raised this issue in the past (especially in the first federal habeas proceeding), this claim should be dismissed as an abuse of writ.

Petitioner insists that Smith was a "new" change in the law and that the equitable considerations inherent in Rule 9(b) disallow a bar of this claim under the "abuse of writ" doctrine. Furthermore, Petitioner submitted at the May 21, 1984 hearing the affidavit of his first habeas counsel, James C. Bonner. Mr. Bonner attests that former defense counsel included in the first federal habeas petition only exhausted claims. He was "unaware of any federal constitutional basis upon which he could argue that the failure of the probation officer to warn Mr. Moore violated the federal constitution." Second Bonner Affidavit 2.

Disposition of this claim thus turns on whether the change in the law was sufficient to constitute a "justifiable reason ... mak[ing] it fair and just for t[his Court] to overlook the allegedly abusive conduct...." *Potts*, at 741. That is, the Court must consider whether Petitioner met his burden of proving excusable neglect in not raising this issue in past petitions. *Jones v. Estelle, supra*, at 164 & n. 4, 165.

Relevant to this inquiry is the fact that Petitioner was represented by counsel, as opposed to proceeding *pro se*. This Court finds persuasive the Fifth Circuit's reasoning in *Jones* that less deference may be given to Petitioner's reasons for neglected claims when Petitioner has been represented by counsel. However, the *Jones* court considered "new" claims in a successive petition, noting that the "new" claims were not based on a later change in law. 722 F.2d at 167 n. 8.

Also relevant to this Court's inquiry is the fact that *Potts, Paprskar, Haley v. Estelle*, 632 F.2d 1273 (5th Cir.1980) and *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir.1978), among other "abuse of writ" cases,[1] may have had their vitality weak-

ened by recent Supreme Court cases concerning exhaustion. This trend was recognized by the *Jones* court.

Underlying *Galtieri* and *Paprskar* was a greater willingness to tolerate unexhausted claims than the Supreme Court in *Rose v. Lundy*, 455 U.S. 509 [102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)] [cits], later made plain was allowable. *Galtieri* allowed appellate disposition of mixed petitions and *Paprskar* dwelled upon the absence of connection between the exhausted and non-exhausted claims....

The *Lundy* court's call for the dismissal of mixed petitions would have little meaning if it could be avoided by withholding unexhausted claims, or deleting them by an amended petition. Justice O'Connor's plurality opinion noted that its rule of dismissal, calculated to accommodate concerns for federalism and finality of conviction with access for state prisoners to the federal courts, required the doctrine of writ abuse for its enforcement.

*Jones*, 722 F.2d at 168 (footnote omitted).

Further question concerning what degree of deference should be given to "new law" claims is raised by the Supreme Court's decision in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In *Engle*, assertions by state prisoners in federal habeas corpus proceedings that jury instructions given at their trials violated their due process rights were barred because the prisoners did not comply with a state contemporaneous objection rule. Specifically, Isaac failed to comply with an Ohio court rule mandating contemporaneous objections to jury instructions. Ohio law required defendants to prove an affirmative defense by a preponderance of the evidence. Ten months after his conviction, however, the Ohio Supreme Court ruled the jury instructions defective. Nevertheless,

---

1. There was no need to question the standard for abuse of the writ in *Stephens v. Kemp, supra*, 721 F.2d 1300, which was later stayed,

since the issues were largely disposed of on the merits or on other grounds.

Isaac was denied the benefit of that ruling because he failed to object to the instructions at trial, as mandated by state law. Isaac raised a constitutional challenge to the jury instructions in federal court under 28 U.S.C. § 2254, in effect arguing that the instructions incorporated an unconstitutional burden-shifting. The district court determined that the claim was waived by Isaac's failure to object at trial and that no cause or prejudice could be shown. The Sixth Circuit reversed, ruling that *Wainwright v. Sykes* did not preclude consideration of Isaac's due process claim. Rather, the court found that the Ohio courts had consistently held defendants to the burden of proving affirmative defenses by a preponderance of the evidence. The futility of objecting to the instructions at trial supplied adequate cause for Isaac's waiver.

In reversing the Sixth Circuit, the Supreme Court reaffirmed the rule of *Wainwright v. Sykes* and held that Isaac waived his claim by failing to object at trial. The court found no cause for Isaac's default based on the asserted ground that he could not have known at the time that the Due Process clause addressed the burden of proving affirmative defenses. The Court held this despite petitioners' arguments that they could not have known at the time of trial that the state jury instructions were constitutionally objectionable. The court emphasized that numerous defendants had previously relied on *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). "In most cases, the defendants' claims countered well-established principles of law." 456 U.S. 132, 102 S.Ct. 1574. In light of the many challenges made elsewhere, the court "could not say that [the state prisoners] lacked the tools to construct their constitutional claim."

We need not decide whether the novelty of a constitutional claim ever established cause for failure to object. We might hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim. On the other hand, later discovery of a constitutional defect unknown at the time of trial does not invariably render the original trial fundamentally unfair.

456 U.S. at 131, 102 S.Ct. at 1573.

Further expounding on that theme, the court stated:

We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.

456 U.S. at 134, 102 S.Ct. at 1574.

It is true that "exhaustion" (*Rose*) and "procedural default" (*Engle*) case law analysis is being intermixed in this Court's "new law," abuse-of-writ analysis. It is also true, however, that the underlying policies of comity and finality of litigation seen in *Rose* and *Engle*, along with *Woodard v. Hutchins*, and *Antone v. Dugger, supra*, cannot be ignored. *Jones, supra; see also Barefoot v. Estelle*, —— U.S. ——, ——, 103 S.Ct. 3383, 1391–1392, 77 L.Ed.2d 1090, 1100–1101 (1983). Indeed, the *Jones* court, when considering abuse of writ in the "new claims" context, referred to the *Engle* court's reasoning without deciding whether the *Engle* duty to anticipate future changes in the law extends to a habeas petitioner attempting to explain omitted claims. 722 F.2d at 165 n. 5. *Jones* did expressly refer to this underlying concern, however, when it noted that the case before it

does not present the question of whether a lawyer's omission of a claim from an earlier writ petition may be excused by a later change in law which could have reasonably been anticipated. Relatedly, note the suggestion of Justice Blackmun

that a state could require a petitioner to assert all claims in a single petition. Escape from a failure to do so would be measured by *Wainwright v. Sykes,* 433 U.S. 72 [97 S.Ct. 2497, 53 L.Ed.2d 594] [cits]; *Rose v. Lundy,* 455 U.S. 509, 525 n. 2 [102 S.Ct. 1198, 1207 n. 2, 71 L.Ed.2d 379] [cits] (1982) (Blackmun, J., concurring in the judgment).

The case before this Court *does* present the question of "whether a lawyer's omission of a claim from an earlier petition may be excused by a later change in law which could have reasonably been anticipated." *Id.* Furthermore, the state in this case *does* require a petitioner to assert all claims in a single petition. O.C.G.A. § 9–14–51. The state court expressly concluded that "since this claim could have been raised in Petitioner's original habeas corpus petition the Court finds that he has waived the right to do so in this successive habeas petition." *Moore v. Kemp,* No. 6381 at p. 2 (Sup.Ct. Butts Cty. May 18, 1984) (Respondent's Exh. 2), *certificate of probable cause and of motion for stay of execution denied* (Ga. Supreme Court No. 2875, May 18, 1984) (Respondent's Exh. 3). 1984) (Respondent's Exh. 3).

This Court holds that the analysis of the "new law" claims found in the procedural default cases (*Engle*) constitutes an appropriate basis for evaluation of the *Estelle v. Smith* "new law" claim in this case. Accordingly, the Court turns to *Engle* as well as the recent Sixth Circuit case of *Watters v. Hubbard,* 725 F.2d 381 (6th Cir.1984) for disposition of this issue.

In applying these cases, it becomes readily apparent that this claim must fail when it is compared to the degree to which the state prisoners were held to have possessed

the "constitutional tools" to anticipate and argue the "new law" claim rejected in *Engle.* The same conclusion is reached by this Court under *Watters.* In *Watters,* the petitioner argued that the state prosecutor's cross-examination questioning of his court-appointed psychiatrists violated his privilege against self-incrimination. The state argued that Watters failed to make a specific objection as required under Ohio law and that the claim was thus barred under *Engle.*

In denying Watters' claim, the Sixth Circuit concluded that since the case law "by the time of his trial recognized the Fifth Amendment implications inherent in evidence of inculpatory admissions to examining psychiatrists [cits]," the claim was not so "novel" as to constitute cause and that he was not "without the tools to make a specific objection" until the Supreme Court's holding in *Estelle v. Smith.* 725 F.2d at 383.[2]

This Court emphasizes that to the extent the *Engle*-type cases might represent a higher standard than with other abuse of writ cases, it is undertaken in this case because Petitioner has been represented by counsel at the trial and habeas court stages in this process.[3] Different considerations are present in *pro se* situations. *Jones; Compare Sockwell v. Maggio,* 709 F.2d 341 (5th Cir.1983), cited in *Jones* at 164 (no abuse of writ where *pro se* petitioner alleged *Edwards v. Arizona* claim, since *Edwards* was decided three years after petitioner's previous habeas petition was dismissed in 1978).

### B. *The Lockett v. Ohio and Gardner v. Florida Claims*

Petitioner next contends that his sentence was based on a presentence re-

---

**2.** Additionally, since Watters called the psychiatrists as his own witnesses and was not interrogated in a custodial setting, no prejudice could be shown. Once "cause" cannot be shown, however, the "prejudice" requirement falls from immediate consideration. The *Engle* court ceased further consideration of the case after it concluded that "because the [state prisoners] have not demonstrated cause for the default, they are barred from asserting that claim under 28 U.S.C. § 2254...." 456 U.S. at 135, 102 S.Ct. at 1575. Thus, the prejudice requirement would

not be applicable to abuse of writ considerations.

**3.** In this context, the Court would find Petitioner's ineffective assistance of counsel argument to be without merit, since he would in effect be asserting that both of his successive habeas counsel were incompetent and that neither Bonner nor Hicks made use of the "constitutional tools."

port containing inaccurate information, thus depriving him of his constitutional right to be sentenced based on accurate information and depriving him of a meaningful opportunity to review and correct the information. In Petitioner's Appendix K and L, he asserts that material omissions and false statements were in the presentence report. Ten "convictions" enumerated in the report, for example, were in fact either mere arrests or juvenile court adjudications. Petitioner attests that he did not see the report until two years after the sentencing. He argues that under *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (sentencer must consider all mitigating evidence), the sentencing judge failed to rely on a proper record of the mitigating circumstances. Petitioner further asserts that he was denied an opportunity to rebut the contents of his presentence report in violation of *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *see also Raulerson v. Wainwright*, 508 F.Supp. 381, 383–85 (M.D. Fla.1980), *on appeal following resentencing*, 732 F.2d 803 (11th Cir.1984).

Respondent urges application of Rule 9(b) to this claim, since the information to which Petitioner refers is not "newly discovered" and any alleged inaccuracies in the presentence report could have been raised, if not before the sentencing court, certainly before the Georgia Supreme Court on direct appeal or before the first state habeas court.

As mentioned above, Petitioner's first federal habeas petition was filed in this Court in 1978. In an amended petition for a writ of habeas corpus filed in 1980 (Petitioner's Appendix "E"), Petitioner's second habeas counsel, H. Diana Hicks, raised additional claims, including: that the sentence of death was based in part on a presentence report which was not disclosed to the Petitioner. *Id.*, at 7–8. This Court concluded that it could

> see no sound reason for permitting further amendment at this late stage of the present case. As respondent points out,

the petitioner here has been represented at all times. Furthermore, counsel made explicit reference to the presentencing report issue in the original habeas petition, thus demonstrating beyond doubt that this matter had been considered by him and rejected as a basis for relief before this Court. Counsel's decision cannot be seen as unfounded. This question was considered at length by the state habeas tribunal. Testimony was received from Mr. [Hinton R.] Pierce, [Petitioner's trial court counsel,] and an affidavit was introduced from the officer who prepared the report. Upon examining this evidence and the trial transcript, which appears to show that the report was turned over to Mr. Pierce, *see* Transcript of July 17, 1978, at 27–28, the Court ruled adversely to the petitioner. No new evidence has been suggested which would cast doubt on this determination. Thus, the Court can find no basis for concluding that any sound reason exists to allow new counsel to resurrect this question. Motion to amend with respect to this argument is therefore denied.

513 F.Supp. at 805.

Petitioner argues that the evidence suggests his trial court counsel did not in fact receive the presentence report (*see* Petitioner's Appendix K at 4), and that if he did, he could not have had sufficient time to examine it, especially in light of its voluminousness. Thus, Petitioner maintains that he was denied effective assistance of counsel. *See Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, —— U.S. ——, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Furthermore, he asserts that his first habeas counsel, James Bonner, was ineffective because he was under the mistaken belief that since Petitioner had plead guilty, he could not raise this claim in first state habeas petition as a result of *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970) ("a guilty plea cannot be attacked as based on inadequate legal advice unless

counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2064). *See* Petitioner's Appendix 1 (Unsworn, unsigned affidavit of James Bonner asserting that he was 1) ignorant of the law, 2) was struggling with an unmanageable caseload at the time, 3) failed to make a factual investigation and 4) refused to accede to Moore's request to raise the ineffective assistance of counsel claim). Thus, Petitioner in effect argues that two attorneys successively rendered him ineffective assistance of counsel, and only when Diana Hicks took responsibility for his case was the claim properly raised.

Laced throughout Petitioner's present set of claims are ineffective assistance of counsel assertions. In *Jones,* the Fifth Circuit noted that "[c]riminal defendants daily entrust their liberty to the skill of their lawyers." 722 F.2d 159. Moreover,

> [a] capital sentencing proceeding like the one involved in this case, however, is sufficiently like a trial in its adversarial format and in the existence of standards for decision, see *Barclay v. Florida,* 463 U.S. ——, ——, 103 S.Ct. 3418, 3425, 77 L.Ed.2d 1134 (1983); *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), that counsel's role in the proceeding is comparable to counsel's role at trial—to ensure that the adversarial testing process works to produce a just result under the standards governing decision.

*Washington,* at ——, 104 S.Ct. at 2064.

The first state habeas court reproduced the testimony of Petitioner's counsel at the sentencing hearing and considered the Respondent's exhibit showing that a copy of the report was furnished to Petitioner's counsel. The state habeas court record further demonstrates that trial court counsel requested a short period of time prior to the hearing in which to review the report's contents and make any comments.

Petitioner emphasizes that because of the magnitude of inaccuracies contained in the report, that "short period" of time was obviously not sufficient for Pierce to glean even the more obvious errors. Pierce was either unable to comprehend the problem or did not take enough time to study the report, or both.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that an act or particular omission of counsel was unreasonable. *Cf. Engle v. Isaac,* 456 U.S. 107, 133–34 [102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783] (1982).

*Washington,* at ——, 104 S.Ct. at 2065. The Supreme Court was particularly wary of "[t]he availability of intrusive post-trial inquiry into attorney performance ... [which] would encourage the proliferation of ineffectiveness challenges." *Id.*

Petitioner in this case has raised sufficient question for this Court to hesitate, for if attorney Pierce did fail to scrutinize the report, then sufficient likelihood would exist for finding that a wrongful sentence was imposed based on inadequate information. Where the interests of justice so require, such a claim should be entertained. It was a similar hesitation that caused Justice O'Connor in *Eddings* to conclude that "[b]ecause of the trial court's failure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of *Lockett,* it is our duty to remand this case for resentencing." 455 U.S. 104, 117 n., 102 S.Ct. 869, 878 n., 71 L.Ed.2d 1.

Unlike *Washington,* it is arguable in this case that the corrected information "would [not] barely have altered the sentencing profile presented to the sentencing judge." *Id.,* —— U.S. at ——, 104 S.Ct. at 2071.

Nevertheless, repeated opportunities to litigate this issue have been provided in this case. Such opportunities include the first state habeas proceeding—despite the Bonner affidavit attesting otherwise—as

well as the latest sojourn to the Eleventh Circuit, where that court concluded:

> Judge McMillan properly considered all of the evidence in mitigation before exercising his discretion to impose death. The court listened carefully throughout the presentation of mitigating evidence, asking each witness questions, and concluding with each witness by asking whether he had anything further to say. Moore's relatives testified that Moore was a good boy who had never before been in any serious trouble. Moore testified at the sentencing hearing that he shot and killed the victim out of a combination of fright and intoxication. Then, the sentencing judge further noted as additional mitigating circumstances the fact of Moore's truthfulness and cooperation. Furthermore, Judge McMillan made it clear at the sentencing proceeding that he understood and accepted the mandate of Georgia law ... that he had discretion in sentencing.

722 F.2d at 630.

Because Petitioner himself could have raised this claim on direct appeal to the Georgia Supreme Court;[4] because he did raise it in his first state habeas petition, and because he failed to properly present these issues in his federal habeas petition, this Court is warranted under the "abuse of writ" doctrine to deny these claims.

### C. *Proffitt v. Wainwright Claim*

■ Under *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), *modified,* 706 F.2d 311 (1983) *cert. denied,* —— U.S.——, 104 S.Ct. 508, 509, 78 L.Ed.2d 697 (1983), the Eleventh Circuit recognized the specific right accorded a capital defendant to confront witnesses whose statements are used against him. 685 F.2d at 1254. Petitioner argues that 1) there was false and misleading information contained in the presentence report and 2) it was not presented in open court to the extent that the witnesses

supplying the information could have been confronted, under oath, and subjected to cross-examination.

Respondent again urges application of Rule 9(b), emphasizing that *Proffitt,* as did *Estelle v. Smith, supra,* established no new legal principles, but merely interpreted the Sixth Amendment confrontation clause based on *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

Petitioner's theory under *Proffitt* is even weaker than his *Smith* claim analyzed *supra.* This Court's analysis under § II, Part A. of this decision is controlling and thus this claim is denied.

### D. *The Zant v. Stephens Claim*

■ Similarly, *Stephens* created no new constitutional principles helpful to Petitioner's argument that the erroneous presentence report denied him his right to accurate and meaningful appellate review. In *Stephens,* the court held that the limited function served by the jury's finding of a statutory aggravating circumstance does not render Georgia's statutory scheme invalid under the holding of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Fifth Circuit had held that under *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), a jury verdict based on multiple grounds must be set aside if the reviewing court cannot ascertain whether the jury relied on an unconstitutional ground. It also "believed that the presence of the invalid circumstance 'made it possible for the jury to consider several prior convictions which otherwise would not have been before it.'" —— U.S. at ——, 103 S.Ct. at 2739, 77 L.Ed.2d at 245.

In reversing the Fifth Circuit, the Supreme Court recognized the Georgia Su-

---

**4.** Petitioner's Appendix D is his amendment to the first fedral habeas petition. That amendment makes clear Petitioner's capabilities as a litigator, as well as the fact that he raised sophisticated claims, but not the incomplete sen-

tence report claim, even though he saw it, according to his affidavit, two years after his sentence was imposed. Petitioner's Appendix J at ¶ 6.

preme Court's reasoning, wherein that court distinguished *Stromberg* as a case in which a jury might have relied exclusively on a single invalid ground, noting that the jury in this case had expressly relied on valid and sufficient grounds for its verdict. Since the statutory scheme provided that the jury was required to find at least one aggravating circumstance in writing and that appellate review was mandatory, the limited purpose served by the finding of the statutory aggravating circumstance did not allow a jury unlimited discretion in applying the death penalty.

Petitioner raised on direct appeal (Petitioner's Appendix A at ¶ 5(B)) an issue concerning an insufficient record and raised the issue in his first state habeas brief in the wake of *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). *Stephens* does not create a new constitutional right and does not qualify as a "new law" claim in light of *Gregg*. Presentation of this claim at this late date cannot be excused under Rule 9(b).

### E. *The Enmund v. Florida Claim*

▮ Under this theory, Petitioner argues that his death sentence is excessive and disproportionate because he did not intend to kill his victim. The issue was factually raised in his first state habeas petition (*See* Petitioner's Appendix A) and the state habeas court found that Petitioner admitted intent to kill. (Petitioner's Appendix B at 7).

The record shows that this claim was exhausted, was presented for this Court's review, and was initially resolved in his favor. *Blake v. Zant, supra,* at 818. Rule 9(b) is applicable to this claim, which is also without merit. *See Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

### F. *The McCleskey v. Zant Claim*

▮ Moore next argues that he will be executed in an arbitrary and discriminatory manner in violation of the Eighth and Fourteenth Amendments. He is a black man who murdered a black victim and his claim therefore falls within that umbrella of "Baldus Study"[5] cases currently pending before the Eleventh Circuit. *See, e.g., Spencer v. Zant, supra; McCleskey v. Zant, supra,* and *Ross v. Hopper,* 716 F.2d 1528 (11th Cir.1983), *vacated for reh'g en banc,* 729 F.2d 1293 (11th Cir.1984). Under this theory,

> [i]f a petitioner can show some specific act or acts evidencing intentional or purposeful racial discrimination against him, *see Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 [97 S.Ct. 555, 50 L.Ed.2d 450] [cits] (1977), either because of his own race or the race of his victim, the federal district court should intervene and review substantively the sentencing decision.

*Spinkellink v. Wainwright,*[6] 578 F.2d 582 (5th Cir.1978), *reh'g denied,* 441 U.S. 937, 99 S.Ct. 2064, 60 L.Ed.2d 667, *application for stay denied,* 442 U.S. 1301, 99 S.Ct. 2091, 60 L.Ed.2d 649 (1979); *McCleskey v. Zant,* 580 F.Supp. at 347.

Respondent asserts that Petitioner alleged "arbitrariness and capriciousness" in the Georgia death penalty scheme in both his first state habeas petition and in his first federal habeas petition. However, Petitioner did not raise the claim of discrimination in the imposition of the death penalty which he now seeks to raise in his second federal habeas petition. He is thus raising the "Baldus Study" claim for the first time in this court and thus the claim should be barred. Moreover, Respondent contends, none of the decisions Petitioner

---

**5.** Dr. David Baldus, a statistician and social scientist has conducted "a complex scientific study of the administration of Georgia's death penalty, focusing on the issues raised in [*Spencer v. Zant, supra,* and other cases]. 715 F.2d at 1579. Federal habeas petitioners in the above cases seek to use this study to attack the constitutionality of Georgia's death penalty statute.

**6.** The *Spencer* panel opinion emphasized that *Spinkellink* and *Smith* establish that the merits of an attack on the constitutionality of the death penalty as applied turn on the quality of the evidence presented. 715 F.2d at 1581.

cited give him any right to raise the issue at this late date. Finally, he was free to raise empirical study claims in the past, as other state prisoners have done. *See, e.g., McCorquodale v. Balcom*, 525 F.Supp. 408, 429 (N.D.Ga.1981).

Petitioner maintains that he previously raised this issue in substance, but the major statistical studies were not available to him when he filed his first habeas petition. The Court notes a similar set of facts in *Stephens v. Kemp*, 721 F.2d 1300 (11th Cir.1983). In that case, an Eleventh Circuit panel dismissed a similar claim for abuse of writ. "The only excuse tendered by petitioner for his failure previously to present his contentions ... is the claimed ineffectiveness of his prior counsel both at trial and during the prior habeas corpus proceedings." *Id.*, at 1304. The court rejected the ineffectiveness of counsel claim and held that the district court did not err in failing to grant the relief sought. Id.

Subsequently, the *en banc* court met and by an evenly-divided vote, denied the prisoner's request for a rehearing *en banc*. On application for stay, however, the United States Supreme Court granted Stephens' application, pending the decision in *Spencer*, — U.S. —, 104 S.Ct. 562, 78 L.Ed.2d 370 (1983).

This Court declines to grant Petitioner a stay on this claim under Rule 9(b). In both his first state and first federal habeas corpus petitions he alleged "arbitrariness and capriciousness" in the administration of the death penalty. He did not raise the "discrimination" claim regarding imposition of the death penalty, however, which he now seeks to raise in a successive petition.

It is clear to this Court that with little more than mere reference to the Baldus Study, Petitioner is attempting to slip in under the *McCleskey-Ross* and *Spencer* umbrella. Under the panel opinion above, the claim is dismissed as an abuse of writ.

### G. *Assistance of Counsel*

 The Court is troubled by the virtually automatic claim, in habeas petitions, to ineffective assistance of counsel. Since this petition was filed, both habeas counsel have submitted affidavits emphasizing their personal difficulties at the time of the earlier habeas petitions. In addition, the trial court counsel in this case has been attacked as ineffective. Attorneys have turned against themselves as well as each other. Omitted claims are explained away by the incompetence of one or two or all three counsel in this case. The claim itself becomes suspect with each instance of overuse.

In the first petition, this Court found an earlier ineffective assistance of counsel claim to be without merit. *Blake v. Zant*, at 809. Although Petitioner's proposed amendments alleged other instances of ineffective assistance, *see, e.g.*, Petitioner's Appendix (D) (failure to challenge grand jury), no claims were raised concerning ineffective assistance at sentencing. It will not be considered in this successive claim.

### H. *Sentencing Judge's Responsibility*

 In his motion for declaratory judgment, Petitioner argued that the sentencing judge, relying on the probability of appellate relief, took less than full responsibility for his sentencing decision. The claim, which is suspect on its face, was denied at the state trial court level and on appeal. 239 Ga. 67 (1977). It was not raised in the initial petition before this Court, although it was raised in an amendment. No good reason has been shown why it could not be raised in the first petition and it is thus denied. Additionally, although the claim was not presented to the Eleventh Circuit, its conclusions regarding the sentencing proceeding in the latest panel decision suggests that there is little merit to this claim.

All other claims are DENIED.

To summarize, the application for Stay is DENIED, as is the successive habeas petition. Certification for probable cause to appeal is GRANTED. Finally, Petitioner's motion to proceed *in forma pauperis* is GRANTED.

SO ORDERED, this 22nd day of May, 1984.

/s/ B. Avant Edenfield
Judge, United States District Court
Southern District of Georgia

KRAVITCH, Circuit Judge, dissenting:

By adopting the district court's order, the majority holds that Moore's second habeas petition constitutes an abuse of the writ and therefore precludes him from litigating his claims in federal court. Under the precedents of the Supreme Court and this circuit, however, at least two of Moore's claims fall outside the scope of the abuse of the writ doctrine.[1] In holding the contrary, the majority expands the abuse of the writ doctrine in an unwarranted manner. I respectfully dissent.

## I. The Abuse of the Writ Doctrine

In *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962), the Supreme Court stated that a successive application for habeas relief raising claims not previously raised or, if raised, not adjudicated on the merits may be avoided only if there has been an abuse of the writ. *Id.* at 17, 83 S.Ct. at 1078. It is well settled that a successive petition presenting new claims may not be dismissed as an abuse unless the previous omission of these claims resulted from "(1) the intentional withholding or intentional abandonment of those issues on the initial petition or (2) inexcusable neglect." *Stephens v. Kemp,* 721 F.2d 1300, 1303 (11th Cir.), *granted,* —— U.S. ——, 104 S.Ct. 562, 78 L.Ed.2d 370 (1983); *see Potts v. Zant,* 638 F.2d 727, 741 (5th Cir. Unit B 1981), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). Similarly, whether a petition presenting claims previously raised, but not adjudicated, constitutes an abuse depends upon whether the petitioner's intentional abandonment or inexcusable neglect precluded the original habeas court from reaching the merits. Moreover, whether intentional abandonment or inexcusable neglect has occurred "must be tested under equitable principles," *Potts,* 638 F.2d at

743, that is, "the equities of the situation and the conduct of petitioner are relevant to the determination of whether an abuse has occurred," *id.* at 741.

Also important in determining whether there has been an abuse is the underlying purpose of the doctrine. In this regard, the former Fifth Circuit observed, "The principle behind Rule 9(b) is to dismiss those petitions that constitute 'needless piecemeal litigation' or whose 'purpose is to vex, harass, or delay,'" *Haley v. Estelle,* 632 F.2d 1273, 1275 (5th Cir.1980) (quoting *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078).

Attention to these considerations when applying the already narrow standards articulated above promotes flexibility and ensures that "[t]he 'abuse of the Writ' doctrine is of rare and extraordinary application." *Paprskar v. Estelle,* 612 F.2d 1003, 1007 (5th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). In this case, however, the majority not only extends the applicable standards, but also disregards the relevant equitable considerations. The result is an overly broad and excessively rigid application of the doctrine.

## II. The Claims Raised in the Proposed Amendment to the Original Petition

In the petition before us, Moore challenges the presentence report on which the sentencing judge relied as containing substantial inaccuracies. Citing *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), *modified,* 706 F.2d 311, *cert. denied,* —— U.S. ——, ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 697, 698 (1983), he argues that he was unconstitutionally denied an adequate opportunity to examine, contest and confront the report. Moore's substitute appointed counsel had attempted to raise these issues in the initial federal petition by way of amendment proffered while the proceeding was pending, seven months prior to the

---

**1.** These claims concern the presentencing report relied upon by the sentencing court. I agree

with the majority that Moore's other claims constitute an abuse of the writ.

district court's ruling. Moore had raised the claims in his state habeas proceeding, but failed to assert them in the original federal petition. Though granting habeas relief on two other grounds,[2] the district court refused to allow the amendment, and a panel of this court upheld the refusal on Moore's cross appeal as not constituting an abuse of discretion. *Moore v. Balkcom*, 716 F.2d 1511, 1527 (11th Cir.1983), *modified*, 722 F.2d 629.

Moore thus has attempted to challenge the presentencing report twice in federal court: once by amendment to his initial federal petition and again in this his second federal petition. It is undisputed that the matter of alleged inaccuracies in the presentencing report and the constitutional claims arising therefrom have not been decided on the merits by a federal court. Indeed, in the order under review, the district court, while finding that the petition was an abuse of the writ, granted a certificate of probable cause, stating:

> Petitioner in this case has raised a sufficient question for this Court to hesitate, for if Attorney Pierce did fail to scrutinize the report, then sufficient likelihood would exist for finding that a wrongful sentence was imposed based on inadequate information. Where the interests of justice so require, such a claim should be entertained. It was a similar hesitation that caused Justice O'Connor in *Eddings* to conclude that "[b]ecause of [sic] the trial court's failure to con-

sider all of the mitigating evidence risks erroneous imposition of the death sentence, in plain violation of *Lockett*, it is our duty to remand this case for resentencing." 455 U.S. 104, 117 n., 102 S.Ct. 869, 878 n., 71 L.Ed.2d 1.

Unlike *Washington*, it is arguable in this case that the corrected information "would [not] barely have altered the sentencing profile presented to the sentencing judge." *Id.*, at ——, 104 S.Ct. at 2071.

Given Moore's attempt to amend his initial federal petition while his claims were still pending before the district court and his cross appeal of the denial of leave to amend, I fail to see how Moore's actions can be properly characterized as an abuse of the writ. Viewing, as does the majority, the successive petition as raising the *Gardner* and *Proffitt* claims for the first time in federal court, I conclude that the omission of these claims may not be attributed to intentional withholding or inexcusable neglect, for it is evident that Moore actively sought to have the district court address the claims during the pendency of his first habeas proceeding. In other words, Moore's attempt to amend tends to negate any inference that he deliberately or inexcusably omitted the claims from his initial submission to the district court.[3]

To the extent that Moore's attempt to amend, albeit unsuccessful, served to present the *Gardner* and *Proffitt* claims to

---

**2.** The district court had granted relief because it found: (1) the death penalty in this case "shocked the conscience" and thus the Georgia Supreme Court had erred in performing its statutory duty to conduct a proportionality review, and (2) the trial court had improperly relied on a non-statutory aggravating circumstance. A panel of this court reversed on both grounds. *Moore v. Balkcom*, 716 F.2d 1511 (11th Cir. 1983), *modified*, 722 F.2d 629.

**3.** The Ninth Circuit has noted in the context of a petitioner attempting to amend his petition to include an unexhausted claim that, "[the petitioner's] attempt to amend his petition (which negates any inference that [the petitioner] was deliberately withholding the issue) ... convinces us that [the petitioner] would not be barred by the abuse-of-the-writ doctrine from raising the issue in a subsequent federal habeas peti-

tion...." *Powell v. Spalding*, 679 F.2d 163, 165 n. 2 (9th Cir.1982). The Supreme Court is evenly divided over whether unexhausted issues later resubmitted would constitute an abuse of the writ. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 1213 n. *, 71 L.Ed.2d 379 (1982) (Brennan, J., concurring in part and dissenting in part).

This petitioner's attempt to amend presents a far more compelling case for negating an inference of deliberate withholding. Whereas a petitioner in the exhaustion situation under *Lundy* must amend to *withdraw* the unexhausted claims and then later attempt to have them decided in a successive petition, here the petitioner's proffered amendment was for the express purpose of *raising* the issues so that the district court could address all of his claims in one proceeding.

the district court, the successive petition is perhaps best viewed as raising claims previously raised, but not adjudicated on the merits. If so, the crucial issue is whether the district court's failure to reach the merits is directly attributable to Moore's intentional abandonment or inexcusable neglect. Moore gave the district court the opportunity, indeed urged the district court, to decide the claims, but the court declined to do so. The petitioner should not be faulted at this stage for the district court's exercise of its discretion. *See Moore,* 716 F.2d at 1572.

A finding of abuse under these circumstances is inconsistent with equitable principles and the underlying purpose of the doctrine. Except for his failure to include the *Gardner* and *Proffitt* claims in the document which initiated his first habeas proceeding, Moore did all he could to have the claims heard by the first habeas court. Accordingly, this is not an instance of "needless piecemeal litigation," nor is the purpose of the present petition "to vex, harass, or delay." Rather, having sought in vain to have his claims litigated in a single proceeding, Moore now seeks a decision on the merits regarding those claims which the district court earlier refused to address. Because in my view no abuse of the writ has occurred, I would reverse and remand for a decision on the merits.

### III. *The New Law Claim*

Moore raises for the first time a claim based on *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981),[4] alleging that the Probation Officer who compiled the presentencing report violated Moore's fifth amendment rights by not reading him a *Miranda* warning before the interview. The district court dismissed the claim as constituting an abuse of the writ, finding that Moore's failure to raise the claim in his first federal petition was unjustifiable because the holding in *Smith* was a foreseeable development in the law. I am troubled by the majority's endorsement of the district court's analysis for a number of reasons.

First, in reaching its conclusion, the district court by its own admission adopted a new standard for judging whether the omission of a "new law" claim is justifiable. Reasoning that our prior abuse of the writ cases "*may* have had their vitality weakened by recent Supreme Court cases concerning exhaustion," (emphasis added) the court proceeded to hold that new law claims are to be judged by the standard outlined in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), a procedural default case. Hence, the court found the relevant question to be whether "the tools" necessary to anticipate the change in the law were available. The district court also embraced the holding of the recent Fifth Circuit en banc decision in *Jones v. Estelle,* 722 F.2d 159 (5th Cir. 1983), which held in part that a petitioner who was represented by counsel is held accountable to a higher standard in justifying the omission of a claim from a prior habeas petition. *Id.* at 167.

However accurate the district court's predictions as to the future validity of our prior abuse of the writ cases, it is not for either the district court or this panel to overrule precedent. Such abandonment of prior authority can only be accomplished by this court sitting en banc or by the Supreme Court. Indeed, the Fifth Circuit in *Jones* sat en banc in order to reverse the panel's holding, which had applied former Fifth Circuit case law in finding that the petitioner's third petition was not an abuse of the writ. Contrary to the established practice in this circuit, a decision which necessitated en banc consideration in *Jones* has been imported into this circuit's law by a district court order and a panel ruling on a motion for an emergency stay of execution.

Moreover, without citing any direct authority from any circuit, the district court in this case took the novel step of applying the *Engle* holding to successive petitions, a step which the *Jones* majority expressly declined to address. 722 F.2d at 159 n. 5. Under the law of this circuit prior to today, a habeas court was not required to engage

---

4. Moore also alleges that he has a new law claim based on our decision in *Proffitt v. Wainwright,* 685 F.2d 1227 (11th Cir.1982), *modified,* 706 F.2d 311 (1983), *cert. denied,* — U.S. —, — 104 S.Ct. 508, 509, 78 L.Ed.2d 697, 698 (1983). In *Proffitt,* we held that the sixth amendment right of confrontation and cross examination extended to witnesses in capital sentencing proceedings. 685 F.2d at 1251–55. Because part of Moore's argument in his first state habeas proceeding and his attempted amendment was that he was not allowed to examine and contest the presentence report, I would treat this claim as one already raised but not adjudicated, *see supra* Part II.

in an objective inquiry into whether "the basis of a constitutional claim [was] available, and other defense counsel [had] perceived and litigated that claim." *Engle*, 456 U.S. at 134, 102 S.Ct. at 1575. Instead, a subjective inquiry into the petitioner's actual awareness was necessary. As the court in *Haley* stated:

> [I]t is clear that a petitioner cannot be charged with having abused the writ of habeas corpus if, at the time of his earlier petition, he was unaware of the facts on which his newly asserted claims are based, or was unaware that those facts constituted a basis for which federal habeas corpus relief could be granted.

632 F.2d at 1275. By adopting the heightened "cause" standard developed by the *Engle* Court in the procedural default context for evaluating new law claims in successive petitions, the majority significantly modifies our present abuse of the writ case law. Whatever the wisdom of such a drastic step, it is a matter inappropriate for a panel of this court to decide, especially in a proceeding of an emergency nature.

For the foregoing reasons, I would also remand this claim to the district court with instructions to apply the abuse of the writ standards under existing Eleventh Circuit precedent.

IV. *Conclusion*

Unquestionably, genuine abuses of the writ must be prevented, but we must not adopt measures so broad that legitimate claims will not be heard. I fear that the majority's approach today loses sight of the fact that the doctrine "is not intended to automatically foreclose each petitioner who fails to claim every ground for relief in his first application in federal court." *Haley*, 632 F.2d at 1276.

ON PETITION FOR REHEARING
EN BANC

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

A member of this Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in this Court in active service having voted in favor of granting rehearing en banc,

IT IS ORDERED that appellant's motion to recall the mandate is GRANTED, and that appellant's execution, presently scheduled for June 27, 1984, is STAYED pending rehearing en banc. This cause will be reheard by this Court en banc on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of en banc briefs.