**Carl Elson SHRINER,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT,**
**Respondent-Appellee.**

No. 82–5469.

United States Court of Appeals,
Eleventh Circuit.

Sept. 9, 1983.

Rehearing and Rehearing En Banc
Denied Nov. 4, 1983.

---

Daniel T. O'Connell, O'Connell & Hulslander, Gainesville, Fla., for petitioner-appellant.

Carolyn M. Snurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

Convicted of first degree murder and sentenced to death, Carl Elson Shriner appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C.A. § 2254. Shriner seeks relief from his conviction on the grounds that the trial court improperly admitted into evidence a confession and evidence of other crimes. He attacks his sentence on the grounds that the trial court excluded proffered testimony of a clergyman as to electrocutions, the so-called Florida *Brown* issue, and the improper consideration of a nonstatutory aggravating circumstance. We affirm.

The facts that led to Shriner's conviction and sentence are chronicled in some detail in *Shriner v. State*, 386 So.2d 525, 527–28 (Fla.1980). We briefly outline them here. At 6:15 a.m. on October 22, 1976, James Grills entered a Majik Market in Gainesville, Florida and discovered the dead body of Judith Carter, the store clerk. Carter had been shot five times, and the Majik Market apparently had been robbed. Police, summoned to the scene, learned from two women who were the last known customers to enter the store that a young male patron had remained in the Majik Market after they left at approximately 1:30 a.m. earlier that day. Ninety minutes after the women had left the store, a young man with a hand gun had robbed a motel in Gainesville. Based on information provided by the motel clerk and the two women, the police prepared two composite sketches and a written description of a single suspect.

The following afternoon an Alachua County deputy sheriff stopped a car in which the passenger, Shriner, resembled the suspect's description. After advising Shriner of his *Miranda* rights and briefly questioning him, the deputy took Shriner down to the sheriff's office, where questioning continued with Shriner's apparent permission following another set of *Miranda* warnings. Shriner and the couple in whose home he lived consented to a search of the premises where the police discovered a revolver. When law enforcement officers matched the gun to projectiles found in the Majik Market, they took Shriner to the Gainesville Police Department.

After Shriner signed a written waiver following further *Miranda* warnings, questioning began at 9:00 p.m. on October 23. Shriner initially confessed to only the motel robbery and gave inconsistent statements about his involvement in the murder. At 2:00 a.m., however, he finally confessed to the murder.

An Alachua County jury found Shriner guilty of first degree murder and unanimously recommended the death penalty. The trial judge followed the jury's recommendation. On direct appeal, the Florida Supreme Court upheld both the conviction and sentence, *Shriner v. State,* 386 So.2d 525 (Fla.1980), and the United States Supreme Court denied Shriner's petition for certiorari. *Shriner v. State,* 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981).

Shriner then filed a petition for habeas corpus in federal district court. When the district court denied relief in an unpublished opinion, Shriner appealed to this Court.

### GUILT PHASE

*Admission of the Confession*

Shriner challenges the admission at trial of his confession on three grounds. First, he argues the police lacked probable cause to take him into custody and, therefore, the confession is the fruit of an unlawful detention. Second, he claims the police did not "scrupulously honor" his right to cut off questioning, thus violating his *Miranda* rights. Third, he asserts that under the "totality of circumstances," including the allegedly inordinate length of questioning, his statements were coerced and involuntary.

◼ As to the arrest, the police had probable cause to stop Shriner and take him into custody. The officer who stopped Shriner testified that he bore a "striking resemblance" to the suspect described in the police bulletin. The written description and composite sketches were based on information provided by three witnesses, all of whom were interviewed by the police. While Shriner claims there were significant discrepancies between the description and his appearance that day, the state judge credited the officer's testimony to the contrary. Findings of fact are entitled to a presumption of correctness in a federal habeas corpus proceeding. 28 U.S.C.A. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The police encountered Shriner one day after the two crimes in the same county. With such a temporal and geographic proximity, a description by witnesses of a suspect may provide a sufficient basis for arresting an individual who closely resembles the description. *See, e.g., Chambers v. Maroney,* 399 U.S. 42, 46–47, 90 S.Ct. 1975, 1978–1979, 26 L.Ed.2d 419 (1970) (police had probable cause to arrest suspects whose clothing and car matched description).

Shriner's reliance on *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) is misplaced. In *Dunaway,* the Court held that police cannot take a suspect into custody for questioning in the absence of probable cause. *Id.* at 216, 99 S.Ct. at 2258. Here, the police had probable cause.

◼ Shriner's *Miranda* rights were not violated. From the time of his arrest, 4:00 p.m. on October 23, until his confession to murder, 2:00 a.m. the following morning, Shriner received three full sets of *Miranda* warnings, with the last occurring right before questioning began at 9:00 p.m. Shriner signed a written waiver of his rights at that time. He testified at the suppression

hearing that, as a former convict, he understood the meaning of *Miranda* warnings. While Shriner claims to have requested an attorney prior to the 9:00 p.m. commencement of the questioning session, a law enforcement officer to whom Shriner allegedly made the request denied Shriner's assertion. At the hearing, Shriner could not remember whether he had requested an attorney during the questioning session, and the state attorney who conducted much of the questioning testified categorically that Shriner had not done so.

Although Shriner argues that, prior to his confession, he requested all questioning to cease, the state attorney who asked the questions testified at both the suppression hearing and at trial that he thought Shriner wanted questioning to terminate only in relation to the robbery. Significantly, Shriner offered no rebuttal testimony. Crediting the testimony of the government attorney, the state courts found that Shriner merely wanted to limit the subject matter, not end all questioning. *Shriner v. State,* 386 So.2d at 532. The record "fairly support[s]" this factual determination. 28 U.S.C.A. § 2254(d)(8).

Given that fact, the state attorney could continue to ask Shriner questions about the murder without providing further *Miranda* warnings. In *United States v. Vasquez,* 476 F.2d 730 (5th Cir.), *cert. denied,* 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973), the former Fifth Circuit denied the suppression of inculpatory statements made to government agents where the defendant, suspected of possessing an unregistered firearm, told police he did not want to discuss a shooting but agreed to answer questions about the rifle itself.

> When a person in custody has responded to proper police interrogation by voicing a general willingness to talk, subject only to a limited desire for silence, and his wishes not to discuss a particular subject-matter area are respected, nothing rooted in law or constitutional policy makes it improper to question him as to any unlimited subjects.

476 F.2d at 732–33 (footnote omitted). The Supreme Court has likewise indicated that the police do not in all circumstances have to cease all questioning once a suspect in any way exercises his *Miranda* rights.

> [Nothing] in the *Miranda* opinion can sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.

*Michigan v. Mosley,* 423 U.S. 96, 102–03, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975) (footnote omitted). The test is whether the state "scrupulously honored" defendant's right to cut off questioning. *Id.* at 104, 96 S.Ct. at 326 (quoting *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)). Here, the state complied fully with Shriner's only request: to terminate questioning as to the robbery. In short, the government "scrupulously honored" the only right Shriner exercised.

Shriner's inculpatory statements were not coerced or involuntary. Besides reasserting arguments that his requests for counsel and to end questioning were not heeded, Shriner offers little in support of his contention. Consistent with the testimony of the law enforcement officials, he does not claim on appeal that anyone threatened him or promised him anything in exchange for a confession. He merely notes that intensive questioning lasted for around five hours, during which period he remained handcuffed in a small room except for trips to use the lavatory, and that his girl friend was present in an adjacent room in an emotionally and physically distraught state. Shriner can hardly attribute his confession to a concern for his girl friend since he initially told the police she committed the murder. Neither has he established that the physical surroundings and length of questioning without new *Miranda* warnings overcame his "will ... and capacity for self-determination." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) (quoting *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (Frankfurter, J.)). Shriner equivo-

cated at the suppression hearing as to whether he ever told the law enforcement officials he felt tired. The use of handcuffs does not establish coercion, *United States v. Ogden,* 572 F.2d 501, 502 (5th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 564, 58 L.Ed.2d 650 (1978), and an accused does not have to be continually reminded of his *Miranda* rights once he has knowingly waived them. *Biddy v. Diamond,* 516 F.2d 118, 122 (5th Cir.), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976); *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir.1973). The trial court properly denied Shriner's motion to suppress his confession.

### Admission of Evidence of Robbery

■ At the murder trial, the state called as a witness the motel night clerk who, over Shriner's objection, identified Shriner as the robber and testified that the gun used by the robber closely resembled the murder weapon, which the state introduced into evidence. Under Florida law, like federal, evidence of other crimes is inadmissible to show defendant's bad character, but is admissible to show, among other things, identity. *Ashley v. State,* 265 So.2d 685, 693 (Fla.1972); *Williams v. State,* 117 So.2d 473, 475–76 (Fla.1960). The Florida Supreme Court in Shriner's direct appeal succinctly explained why the evidence was admissible to establish identity:

> The following facts adduced at trial make apparent the relevancy of this evidence: (1) police found a .38 caliber gun and cartridges in [Shriner's] residence; (2) ballistics expert Bollenbach identified the gun found in [Shriner's] residence as the murder weapon; (3) at 3:00 a.m., only ninety minutes after Judith Carter's murder, a man robbed the 8 Days Inn.... Thus, the evidence of the 8 Days Inn robbery, if believed by the jury, *places the murder weapon in the hands of [Shriner] within ninety minutes of Judith Carter's demise.* Such evidence is clearly probative of the murderer's identity.

*Shriner v. State,* 386 So.2d at 532–33 (emphasis in original) (footnotes omitted). Shriner asserts no reason why introduction

of the extrinsic crime evidence, given its admissibility as a matter of evidence law, violated the Constitution.

### SENTENCING PHASE

#### *Exclusion of Proffered Testimony by Clergyman as to Electrocutions*

■ Shriner claims that the trial court, by precluding a Methodist minister from testifying about the three electrocutions he witnessed, denied the jury evidence relevant to "evolving standards of decency," in contravention of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Shriner misreads *Lockett.* While the plurality opinion indicated that a defendant in a capital case must be permitted to introduce virtually any evidence relating to his character, record or offense, it did not hold that all evidence proffered by the defendant concerning the propriety of electrocutions in general must be admitted. Rather, the plurality explicitly admonished:

> Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense.

*Id.* at 604 n. 12, 98 S.Ct. at 2965 n. 12. The exclusion, on relevancy grounds, of the minister's proffered testimony, which did not at all concern Shriner's background or the crime committed, did not violate *Lockett.*

#### *Florida Supreme Court's Solicitation and Collection of Extra Record Material (The Brown Issue)*

■ As one of the petitioners in *Brown v. Wainwright,* 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), Shriner unsuccessfully attacked the constitutionality of the Florida Supreme Court's alleged use of nonrecord information in appeals of capital convictions. Shriner acknowledges he has no proof that the Florida Supreme Court used any nonrecord information in his direct appeal, and asks us to remand to the district court so he can engage in pertinent discovery. This point is controlled by *Ford v. Strickland,* 696 F.2d 804 (11th Cir.) (en

banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). We specifically rejected the sort of discovery Shriner seeks here.

### Failure to Consider Nonstatutory Mitigating Factors

Shriner asserts the (1) jury, (2) trial judge, and (3) Florida Supreme Court considered only statutory mitigating factors, in violation of *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982).

■ As to the jury, Shriner argues that the trial judge, by not expressly informing the jury it could consider nonstatutory mitigating circumstances, left the jury with the contrary impression. The jury instruction on aggravating and mitigating circumstances read, in pertinent part, as follows:

> The aggravating circumstances which you may consider are limited to such of the following as may be established by the evidence [whereupon the court read the aggravating circumstances in the statutory language].

> The mitigating circumstances you may consider, established by the evidence, are as follows [whereupon the court read the mitigating circumstances in the statutory language].

Shriner neither objected to the instruction at trial nor raised the point on direct appeal. This procedural default precludes federal habeas corpus review on this issue unless excused for cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We need not decide whether cause exists because Shriner has not established actual prejudice as required by *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

First, Shriner himself asked the jury to show no mercy and to sentence him to death. Accordingly, his lawyer did not argue to the jury any mitigating circumstances specific to Shriner. Given this situation, Shriner cannot attribute the jury's recommendation of death to the jury instruction. Second, the jury instruction is quite similar to that in *Ford v. Strickland,* 696 F.2d at

811–12, where we found insufficient prejudice to excuse the procedural default.

After the jury recommended death, Shriner did an about-face, asking the judge for life and arguing what he felt were mitigating circumstances. Shriner argues that the judge's sentencing order indicates he did not consider nonstatutory mitigating factors.

There is no indication in the record or briefs that Shriner raised this issue on his direct appeal. The Florida Supreme Court's opinion in the appeal nowhere mentions the issue. The failure to raise an issue on appeal, no less than at trial, may amount to a waiver of the point in a federal habeas corpus proceeding. *See, e.g., Evans v. Maggio,* 557 F.2d 430 (5th Cir.1977).

In any event, the district court properly disposed of this argument as follows:

> It does not appear that [trial] Judge Green limited his consideration of mitigating factors to only those specifically enumerated in the statute. Judge Green found psychiatrist's reports diagnosing Shriner as a "sociopathic personality" insufficient to constitute a mitigating circumstance, since in his view Shriner's capacity was not diminished. The Florida Supreme Court, upon review of the record and the same pre-sentence investigation material, also found no mitigating circumstances. There is likewise no indication that the Florida Supreme Court limited its review to the absence of only statutory mitigating circumstances. Indeed, the Court specifically holds "[t]he record also supports the finding of no mitigating circumstances." *Shriner v. State,* 386 So.2d 525, 534 (Fla.1980).

It appears clear to us that the trial judge and the Florida Supreme Court considered everything in determining whether a life sentence would be more appropriate than a death sentence, given the statutory base for capital punishment. That the Florida courts found the evidence of mitigating circumstances unpersuasive does not mean they improperly ignored it, but rather signifies they performed their task to weigh the evidence. *Cf. Eddings v. Oklahoma,* 455

U.S. 104, 114–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982) ("The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence."). There is nothing in this record to indicate that either the trial or appellate court thought any allegedly mitigating evidence could not be considered in the sentencing process.

### Consideration of Nonstatutory Aggravating Circumstances

■ Shriner argues the trial judge improperly considered a nonstatutory aggravating factor when he mentioned in his sentencing remarks and written order Shriner's poor prison disciplinary record. It is unclear, however, whether the trial judge considered Shriner's disciplinary record to be an aggravating factor or whether, having already found two statutory aggravating factors potentially warranting the death penalty, he considered Shriner's record merely to see if any mitigating factors existed. The judge correctly instructed the jury that, under Florida law, only the aggravating factors enumerated in the statute could be considered, and one might assume the judge followed his own instruction.

Even if the judge considered a nonstatutory aggravating factor, this error of state law does not rise to the level of a constitutional violation requiring federal habeas corpus relief. The United States Supreme Court has twice this term upheld a death sentence even though the sentencer considered an invalid aggravating circumstance. *Barclay v. Florida,* —— U.S. ——, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *Barclay* is particularly on point. That case, like this one, involved the alleged consideration by a state trial judge, applying the Florida death penalty statute, of a nonstatutory aggravating factor. As in *Barclay,* the sentencing judge here found no mitigating circumstances and some proper aggravating circumstances. He did not consider as aggravating any constitutionally protected conduct.

In upholding the sentence in *Barclay,* the United States Supreme Court treated the consideration of the nonstatutory factor as purely a matter of state law, indicating that a death sentence may be constitutional despite being based on both statutory and nonstatutory aggravating factors. *Id.* —— U.S. at ——, 103 S.Ct. at 3426–28 (plurality opinion) (citing *Proffitt v. Florida,* 428 U.S. 242, 256, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976); *id.* —— U.S. at ——, 103 S.Ct. at 3432 (Stevens, J., concurring). *See also Stephens,* —— U.S. at ——, 103 S.Ct. at 2743, 77 L.Ed.2d at 251. The plurality deemed particularly significant the Florida Supreme Court's review of death sentences, especially its careful and restrained use of a harmless error rule:

> [The state cases] indicate that the Florida Supreme Court does not apply its harmless error analysis in an automatic or mechanical fashion, but rather upholds death sentences on the basis of this analysis only when it actually finds that the error is harmless. There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance . . . . "What is important . . . is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." [*Stephens,* —— U.S. at ——, 103 S.Ct. at 2743] (emphasis in original).

*Barclay,* —— U.S. at ——, 103 S.Ct. at 3428.

In the present case, the Florida Supreme Court viewed any error as harmless. It reasoned that even if the trial judge did improperly consider Shriner's prison record in aggravation, he would have reached the same result anyway because two legitimate statutory aggravating factors existed without any mitigating factors to counterbalance them. *Shriner v. State,* 386 So.2d at 534. In light of *Barclay,* this Court cannot overturn this harmless error determination. If anything, *Barclay* presented a stronger case for holding the death penalty arbitrary

because there, unlike here, the jury recommended a life sentence.

The Florida courts satisfied the constitutional requirement to make an "individualized determination on the basis of the character of the individual and the circumstances of the crime." *Barclay,* —— U.S. at ——, 103 S.Ct. at 3428 (quoting *Zant v. Stephens,* —— U.S. ——, ——, 103 S.Ct. 2733, 2944, 77 L.Ed.2d 235, 251 (1983)). The state trial judge reviewed presentence reports regarding Shriner, and the one allegedly improper factor considered by the judge involved Shriner's record.

■ Focusing largely on the prosecutor's comment at closing argument that Shriner had created a great risk of death to many people in the robbery of the motel, a separate crime from the murder, Shriner finally claims the jury considered nonstatutory aggravating circumstances. First, because Shriner did not raise this point on direct appeal to the Florida Supreme Court, there is a procedural default. *See, e.g., Ford v. Strickland,* 696 F.2d at 816–17. Second, with a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks. *Cf. Grizzell v. Wainwright,* 692 F.2d 722, 726–27 (11th Cir. 1982) (jury is presumed to follow judge's instructions as to evidence it may consider), *cert. denied,* —— U.S. ——, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983). Third, since Shriner himself asked the jury to show no mercy and to sentence him to death, he cannot attribute the jury's recommendation of death to any comment by the prosecutor. Shriner's argument as to the unconstitutionality of the jury's consideration is of no avail.

### Conclusion

There having been no constitutional infirmity in the state proceedings, either in the trial phase or sentencing phase, the district court properly denied the petition for a writ of habeas corpus.

AFFIRMED.