(No. 68380.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PATRICK O. HICKS, Appellant.

*Opinion filed December 21, 1989.*

CLARK, J., joined by STAMOS, J., dissenting.

STAMOS, J., joined by CLARK, J., also dissenting.

Daniel M. Kirwan, Deputy Defender, and E. Joyce Randolph, Assistant Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Jack Donatelli, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Patrick O. Hicks, was charged with burglary in an information filed April 28, 1987, in the circuit court of Fayette County. Before trial, Hicks moved to suppress certain statements. The trial judge granted his motion, finding that Hicks had invoked his right to have counsel present during interrogation and that law enforcement authorities had violated his fifth amendment right. The State appealed from the order suppressing evidence. (107 Ill. 2d R. 604(a)(1).) On appeal, the appellate court, with one justice dissenting, reversed, holding that defendant had waived his right to counsel and, therefore, the trial court should not have suppressed his statements. (179 Ill. App. 3d 468.) We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315). We affirm.

Defendant was arrested and taken to the Fayette County jail on February 9, 1987. A safe had been taken from the Fayette Service Co-op building and defendant's fingerprints were found on the safe when it was recovered. Upon arriving at the sheriff's department, Deputy Daniel Taylor took defendant Hicks to a visitation room. There, Taylor informed Hicks that he would be questioned concerning the Fayette Service Co-op burglary. Taylor then read to Hicks his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and explained each of them.

Defendant indicated that he understood his rights and signed a written waiver form. Deputy Taylor told defendant that he knew that Hicks had not entered the

Fayette Service building itself, but that he knew that Hicks was in some way involved because his fingerprints were found on the safe that had been recovered. At this point, defendant refused to comment further. Deputy Taylor then discontinued questioning. The next morning at his arraignment, defendant requested counsel, which the court appointed.

Because defendant Hicks was on parole, on the day following his arraignment he was returned to Graham Correctional Center in Hillsboro as a parole violator. Deputy Taylor alone transported him there. What transpired during the journey provided the basis for the trial court's suppression.

Deputy Taylor testified that soon after the vehicle left the driveway of the Fayette County jail, defendant voluntarily stated, "Dan, I was not in that Fayette Service building *** I did not go into the building at all." Taylor responded, "Pat, I told you the day that I placed you, I told you that I knew you were not in the building. However, I cannot talk to you about the case because you have an attorney." Hicks went on to explain that he did not participate in the burglary. He stated that two acquaintances brought the safe to his home, looking for a cutting torch and, at that point, he touched the safe.

Deputy Taylor further testified that shortly after defendant Hicks finished this statement, they drove past the Fayco Enterprises, Inc., building, the site of a different recent burglary. Deputy Taylor testified that he "jokingly" turned to Hicks and asked whether he had any knowledge concerning that burglary. Defendant then said "the talk is that Terry Richards went into the Fayco building," to which Taylor said he responded, "the talk is that Pat Hicks and Terry Richards went into [the] Fayco building." Defendant then, according to Taylor, "kind of hung his head a little bit and he said,

'yes, that's right. Terry Richards and I carried the safe out of the Fayco building.' "

The trial court suppressed defendant's confession, finding that it was "[c]ertainly a violation of rights." The majority of the appellate court disagreed, finding that defendant voluntarily waived his right not to be interrogated in the absence of his attorney. (179 Ill. App. 3d at 471.) The dissenting justice contended that the State had the burden of establishing that the defendant specifically waived his right to have counsel present regarding the inquiry about the second burglary. 179 Ill. App. 3d at 471 (Harrison, J., dissenting).

We are concerned here only with defendant's fifth amendment right to counsel. No question has been raised under the sixth amendment. Our review of the facts in this case reveals that defendant, by voluntarily discussing and inculpating himself in the Fayette Service Co-op burglary, waived his fifth amendment right to have counsel present during further interrogation. The constitutional principles applicable to this case indicate that the trial court erred.

The Supreme Court, in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, articulated the general rule that once a defendant invokes his right to have counsel present during interrogation, all questioning must cease until counsel actually is present. In our case, defendant Hicks asserted his right to counsel at his arraignment. Law enforcement officials appropriately did not renew questioning. *Edwards* acknowledged that one may waive this fifth amendment right, however, after it is invoked. To show waiver the State must establish that it was "knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Ed-*

*wards v. Arizona*, 451 U.S. at 486 n.9, 68 L. Ed. 2d at 387 n.9, 109 S. Ct. at 1885 n.9.

The Supreme Court sought to clarify the holding of *Edwards* by defining the approach courts should take when addressing the question of whether a defendant has waived his right to have counsel present during custodial interrogation. (*Oregon v. Bradshaw* (1983), 462 U.S. 1039, 77 L. Ed. 2d 405, 103 S. Ct. 2830.) The preliminary inquiry is whether defendant initiated the conversation in a manner evincing a "willingness and a desire for a generalized discussion about the investigation." (*Bradshaw*, 462 U.S. at 1045-46, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835.) Hicks did this by gratuitously offering exculpatory statements. These comments were not merely necessary inquiries "arising out of the incidents of the custodial relationship." Defendant offered these statements, moreover, after Deputy Taylor again admonished him not to speak in the absence of his attorney.

The second inquiry, as noted in *Bradshaw*, is whether, by defendant's initiation of a conversation, coupled with the totality of the other circumstances, he knowingly and intelligently waived his right to counsel's presence during questioning. We conclude that defendant knowingly and intelligently chose to speak with Deputy Taylor without counsel's presence. The police had warned defendant of his rights on several occasions. These warnings came in both oral and written form. Moreover, defendant was not a stranger to the criminal justice system. He cannot, therefore, persuasively contend that he did not understand that he had the right to keep quiet until his attorney was present. Furthermore, after defendant initiated the conversation, Deputy Taylor told defendant that he could not talk about defendant's involvement because Taylor had an attorney. Nevertheless, defendant continued to discuss his connection

with the crime. We find that the trial court misapplied the law as announced by the Supreme Court.

Clearly, under *Edwards* and *Bradshaw*, defendant waived his right to counsel as to the burglary with which he was charged. The question before us is whether this waiver also extended to defendant's fifth amendment right to counsel as to the Fayco Enterprises burglary, about which Deputy Taylor inquired after defendant made the voluntary statements concerning the Fayette Service Co-op burglary.

In *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093, the Supreme Court emphasized the virtues of a bright line rule to assist law enforcement personnel and courts in applying the *Miranda* requirements. The Court held, in *Roberson*, that when an accused asserts his right to counsel, he has indicated that he considers himself unable to deal with the pressures of custodial investigation without legal assistance. Thus, the Court held that a suspect's request for counsel should apply to any questions the police may pose, not only those relating to a specific investigation. *Roberson*, while adopting the bright line rule of *Edwards* that all interrogation must cease when a suspect requests an attorney, also acknowledged the holding of *Edwards* that the accused may waive his right to counsel by himself initiating further communications, exchanges or conversations with the police. (*Roberson*, 486 U.S. at 682, 100 L. Ed. 2d at 714, 108 S. Ct. at 2098.) The Court, in *Roberson*, did not address the breadth of the waiver or whether the waiver is as broad as the right to counsel, which attaches upon request. As noted above, the question presented in our case is, when the defendant, Hicks, waived his right to counsel by initiating the conversation with the deputy and freely discussing his involvement in the crime with which he was charged, were the police thereby autho-

rized to interrogate him concerning other crimes? *Roberson* did not answer this question.

Logic would suggest that if the virtue of a bright line rule—the ease of application—supports cutting off all interrogation when an accused requests counsel, then the virtue of a bright line rule would permit interrogation as to any offense after a waiver. When counsel is requested, the right to counsel, which attaches, is not investigation specific. So also, when the right to counsel is waived, the waiver should not be investigation specific. The rationale supporting the requirement that all questions cease once an accused has requested counsel, as noted above, is that the accused considers himself unable to deal with custodial interrogation without counsel. If an accused waives the right to counsel, it would appear that he no longer considers himself incapable of dealing with the pressures of custodial interrogation. Therefore, following a waiver of the right to counsel, the defendant may be interrogated as to any offense, unless he has indicated his waiver is a limited waiver. See *Shriner v. Wainwright* (11th Cir. 1983), 715 F.2d 1452.

Defendant's contention that he was tricked into making a confession is not persuasive. In *Colorado v. Spring* (1987), 479 U.S. 564, 93 L. Ed. 2d 954, 107 S. Ct. 851, the Supreme Court held that police need not inform a defendant of all the crimes about which he may be questioned. What is important is that defendant understands that he may refrain from answering any questions until his attorney is present. Here, defendant was repeatedly informed of his rights; he invoked his rights, and then clearly waived his rights.

The fact that the topic of conversation shifted to another crime after defendant's waiver of his rights does not render his confession involuntary. The proper inquiry focuses on the custodial atmosphere, not the spe-

cific line of questioning. (*Butler v. Aiken* (4th Cir. 1988), 846 F.2d 255, 259; *United States v. Poole* (D.C. Cir. 1974), 495 F.2d 115, 119.) Defendant knew at all times that he could end the conversation. He chose, instead, to speak. In the words of the Supreme Court, "it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." *United States v. Washington* (1977), 431 U.S. 181, 188, 52 L. Ed. 2d 238, 245-46, 97 S. Ct. 1814, 1819.

For these reasons, the judgment of the appellate court, reversing the trial court's order suppressing defendant's statement, is affirmed.

*Appellate court affirmed.*

JUSTICE CLARK, dissenting:

I do not agree with the majority's conclusion that the trial court misapplied the law in suppressing the statements at issue here (132 Ill. 2d at 494). Accordingly, I must dissent.

The majority decides that by initiating conversation with the police officer about the Fayette Service Co-op burglary, defendant completely waived his previously invoked right to counsel, including his right to have counsel present during police interrogation pertaining to crimes unrelated to the Fayette Service Co-op burglary. (132 Ill. 2d at 495.) The majority concludes:

"Logic would suggest that if the virtue of a bright line rule—the ease of application—supports cutting off all interrogation when an accused requests counsel, then the virtue of a bright line rule would permit interrogation as to any offense after a waiver. *** The rationale supporting the requirement that all questions cease once an accused has requested counsel, as noted above, is that the accused considers himself unable to deal with custodial interrogation without counsel. If an accused waives the right to counsel, it would appear that he no longer con-

siders himself incapable of dealing with the pressures of custodial interrogation. Therefore, following a waiver of the right to counsel, the defendant may be interrogated as to any offense, unless he has indicated his waiver is a limited one." (132 Ill. 2d at 495.)

The problem with this "logic" is that it ignores the United States Supreme Court's long-standing recognition that an individual's *invocation* of his or her right to counsel is to be viewed in an entirely different light than an individual's *relinquishment* of this right. (See *Connecticut v. Barrett* (1987), 479 U.S. 523, 93 L. Ed. 2d 920, 107 S. Ct. 828; *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) By failing to recognize this crucial distinction, the majority is comparing apples to oranges.

In *Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 707, 86 S. Ct. at 1612, the Supreme Court explained that if there is *any* indication by an individual that he or she wishes to consult with an attorney before speaking, the individual cannot be questioned further. The Court has further stated that any request for counsel must be given " 'a broad, rather than a narrow, interpretation.' " (*Barrett*, 479 U.S. at 529, 93 L. Ed. 2d at 928, 107 S. Ct. at 832, quoting *Michigan v. Jackson* (1986), 475 U.S. 625, 633, 89 L. Ed. 2d 631, 640, 106 S. Ct. 1404, 1409.) Accordingly, "a court must presume that an individual has invoked the full extent of his or her constitutional right to counsel." *United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117, 123.

In contrast to the presumption which favors construing invocations of the right of counsel broadly, the Supreme Court has long recognized that courts must " 'indulge every reasonable presumption *against* waiver' " of the right to counsel. (Emphasis added.) (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409,

quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023; see also *Brewer v. Williams* (1977), 430 U.S. 387, 404, 51 L. Ed. 2d 424, 439, 97 S. Ct. 1232, 1242.) Under this approach, "[d]oubts must be resolved in favor of protecting the constitutional claim." (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409.) Although *Jackson*, *Brewer* and *Johnson* involve the sixth amendment right to counsel, the Supreme Court has indicated that the principles set forth in those cases are also applicable in assessing questions pertaining to waiver of the fifth amendment right to counsel. See *Barrett*, 479 U.S. at 529, 93 L. Ed. 2d at 928, 107 S. Ct. at 832; *Espinoza*, 813 F.2d at 123.

As is apparent from the language of these decisions, the waiver of the right to counsel should be viewed in a fundamentally different manner than the invocation of the right to counsel. Where it is not clear whether an individual has invoked his or her right to counsel, it must be presumed that the right was invoked to its fullest extent. (*Espinoza*, 813 F.2d at 123.) However, where a waiver has allegedly occurred, the alleged waiver must be narrowly construed and every reasonable presumption against waiver must be indulged. (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409.) A review of the Supreme Court's opinion in *Miranda* demonstrates why the two are treated differently.

The decision in *Miranda* was a response to the Court's recognition that, frequently, the purpose of custodial interrogation is "to subjugate the individual to the will of his examiner." (*Miranda*, 384 U.S. at 457, 16 L. Ed. 2d at 714, 86 S. Ct. at 1619.) The Court explained in great detail the types of practices which had been used to accomplish this purpose. (See *Miranda*, 384 U.S. at 445-57, 16 L. Ed. 2d at 707-13, 86 S. Ct. at

1612-19.) The use of such practices placed the individual being interrogated in a helpless position *vis-a-vis* the interrogator. (*Miranda*, 384 U.S. at 455-58, 16 L. Ed. 2d at 712-14, 86 S. Ct. at 1617-19.) To rectify this inequity, the Court fashioned the now well-established *Miranda* rule.

It follows from the Court's recognition of the special vulnerability of individuals in custody (individuals who may not understand the implications of statements they might make), that any statement made by the individual evincing a desire for counsel should be viewed as an invocation of the individual's full right to counsel. It similarly follows that any waiver by the same vulnerable individual should be construed narrowly. In both instances, the presumptions act to protect the vulnerable individual from the coercive power of custodial interrogation, precisely what the Court intended to accomplish in fashioning its *Miranda* rule.

In light of the differences between an invocation and a waiver of the right to counsel enunciated by the Supreme Court, it is incorrect to simply assume, as the majority does, that, even where there has been a full invocation of the right to counsel, *any* knowing and intelligent waiver of the right to counsel (unless the waiver is specifically limited by the individual) opens the door to unfettered custodial interrogation. Instead, I believe that a different approach is called for where the State seeks to use statements made by an individual in a situation such as the one in this case. Under such an approach, once an individual has invoked his or her right to counsel, the State would be required to prove that the individual knowingly and intelligently relinquished his or her right to counsel for all future interrogation, including the right to counsel during interrogation pertaining to unrelated crimes. (See *Miranda*, 384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628.) In deciding

whether the State has met its burden, a court must "'indulge every reasonable presumption against waiver'" (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409, quoting *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023), and "[d]oubts must be resolved in favor of protecting" the defendant's right to counsel (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409). Such an approach, unlike the one set forth in the majority opinion, gives full play to the differences that the Supreme Court has recognized exist between an invocation and a waiver of the right to counsel.

Under the approach outlined above, I would find that defendant did not waive his right to have counsel present during the police officer's interrogation regarding the Fayco Enterprises burglary. Nothing in the record supports any inference that defendant intended to waive this right. All that the record shows is that defendant volunteered statements denying his involvement in the Fayette Service Co-op burglary. (132 Ill. 2d at 491-92.) While this fact certainly supports the inference that defendant knowingly and intelligently waived his right pertaining to the Fayette Service Co-op burglary, it does not support an inference that defendant intended to totally waive his right to counsel during interrogation about other crimes.

Viewing the evidence in this case in light of the presumption that favors the preservation of the right of counsel where at all possible, I would find that defendant only waived his right to counsel for interrogation regarding the Fayette Service Co-op burglary and that he did not waive his previously invoked right to counsel for interrogation regarding the Fayco Enterprises burglary. Absent such a waiver, it was improper for the police to interrogate defendant about the Fayco Enterprises burglary. (See *Edwards v. Arizona* (1981), 451

U.S. 477, 484-85, 68 L. Ed. 2d 378, 386-87, 101 S. Ct. 1880, 1884-85.) Accordingly, I would affirm the trial court's order suppressing defendant's statements.

JUSTICE STAMOS joins in this dissent.

JUSTICE STAMOS, also dissenting:

I concur in Justice Clark's dissent but write separately to emphasize the significance of (1) the State's own express limitation on the interrogation's intended scope when questioning defendant about one crime and (2) the State's failure, prior to a separate interrogation about another crime, to give defendant any new warning pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.

This case involves two crimes: the Fayette Service Co-op burglary and the Fayco Enterprises burglary. When the deputy sheriff first interviewed defendant and gave him a *Miranda* warning, the deputy said that he intended to question defendant about the first crime.

Even if defendant's eventual voluntary statements about the first crime, which were made during a conversation two days after the initial interrogation and one day after defendant's arraignment, could be considered a waiver of defendant's previously invoked fifth or sixth amendment right to counsel regarding that crime, they could not logically constitute a waiver of either of those rights as to the second crime. The reason is that defendant had never been given the required *Miranda* warning of his fifth amendment right as to the second crime.

Defendant was never questioned about the second crime until a conversation took place that was completely separate from and subsequent to his interrogation and arraignment for the first crime. The deputy told defendant during the later conversation that he

could not talk to defendant "about the case," meaning the first crime, because defendant had an attorney, who was representing him after arraignment for the first crime. The deputy obviously gave defendant no admonition concerning the second crime. Defendant cannot be deemed to have waived a fifth amendment right of which he was never apprised as to that separately investigated second crime. And, of course, neither had defendant yet accrued a waivable sixth amendment right to counsel or, much less, obtained counsel as to the second crime, because adversary judicial proceedings regarding that crime had not yet begun. See *Michigan v. Jackson* (1986), 475 U.S. 625, 629-30, 89 L. Ed. 2d 631, 638, 106 S. Ct. 1404, 1407-08; *Moran v. Burbine* (1986), 475 U.S. 412, 428, 89 L. Ed. 2d 410, 425, 106 S. Ct. 1135, 1144.

Thus, any waiver regarding the first crime could not fairly be extended to the second; to do so would strip defendant of his rights as to the second before he had ever been given a chance to claim them. As Justice Clark's dissent notes (132 Ill. 2d at 498-99) in citing *Miranda*, the purpose of requiring admonitions to defendants is to redress in some degree the imbalance of free wills between interrogator and arrestee in a custodial setting. As Justice Clark also points out (132 Ill. 2d at 499-500), the mere fact that defendant arguably waived a right to counsel about which he *had* been admonished regarding the first crime hardly compels a conclusion that he was simultaneously waiving a right about which he had *not* been admonished regarding the second crime.

This is particularly true because the police-initiated questioning regarding the second crime was temporally separate, came unexpectedly and after two days of continuing incarceration, and ran contrary to the deputy's earlier strong implication that questioning would be lim-

ited to the first crime. Furthermore, defendant's confession to the second crime resulted from a direct question by the deputy rather than being volunteered.

(The majority's opinion states that no issue has been raised under the sixth amendment and merely treats · defendant's request for counsel at his arraignment as having constituted invocation of his fifth amendment right. (132 Ill. 2d at 492; *cf.* 179 Ill. App. 3d 468, 469, 471 (Harrison, J., dissenting).) Despite defendant's failure to raise a question under the sixth amendment, case law teaches that providing counsel at defendant's arraignment represented recognition of a right under the sixth amendment, not merely the fifth. (See, *e.g.*, *Michigan v. Jackson*, 475 U.S. at 629-35, 89 L. Ed. 2d at 638-41, 106 S. Ct. at 1407-10; *United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117, 123; see also *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (sixth amendment right operated after arraignment to bar continued custodial interrogation as to a second, related crime).) In any event, whether it was defendant's fifth or sixth amendment right, or both, that he invoked at arraignment and then arguably waived as to the first crime, he was never given an opportunity to invoke or waive either right in relation to the second crime.)

The cases cited by the majority do not weaken these conclusions.

*Shriner v. Wainwright* (11th Cir. 1983), 715 F.2d 1452, involved a defendant who was found not to have requested counsel and was found to have exercised his fifth amendment *Miranda* right, of which he had been fully admonished three times, to end an interrogation session in relation to a robbery but not as to a murder. He was being questioned from the start of the session about both the murder and the robbery. (See *Shriner*, 715 F.2d at 1454; *Shriner v. State* (Fla. 1980), 386 So.

2d 525, 528.) The defendant offered no testimony to rebut the prosecution's contention that his request to discontinue questioning had applied only to the robbery. Accordingly, the State was held to have scrupulously honored the only right he exercised: the right to discontinue questioning about the robbery.

*Shriner* differs markedly from the present cause. In *Shriner*, a confession to the second crime (murder) came during a prearraignment interrogation session that involved both crimes and at the inception of which the defendant's third *Miranda* warning had been given. (*Shriner*, 715 F.2d at 1454-55.) Here, the second-crime confession came (1) in a separate session from the one in which a *Miranda* warning had been given, (2) after arraignment and appointment of counsel for the first crime had occurred (thus implicating the sixth, not merely the fifth, amendment), and (3) even though defendant had been given no separate *Miranda* warning at all as to the second crime. Despite *Shriner*'s observations (715 F.2d at 1455) that a limited invocation of *Miranda* allows continued interrogation except as limited, and that a single invocation of *Miranda* will not forever bar questioning by all police officers about all subjects, both observations must presuppose that a proper *Miranda* warning has been given in the first place. Such a warning was decidedly absent as far as questioning the present defendant about his second crime is concerned.

Likewise, *Colorado v. Spring* (1987), 479 U.S. 564, 93 L. Ed. 2d 954, 107 S. Ct. 851, does not control the present cause. In *Spring*, the defendant had been arrested on weapons charges and was given a *Miranda* warning before an interrogation session, during which he was asked unexpectedly about a second crime (murder) and made an inculpatory statement. He was then given a second *Miranda* warning before a subsequent

interrogation session pertaining to the murder; at the second session, he confessed to aiding the murder. On appeal, he argued that he had been tricked, in violation of *Miranda* (*Miranda*, 384 U.S. at 476, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629), by the State's failure at the initial interrogation session to inform him of the potential subjects of interrogation before he waived his *Miranda* right to refuse questions. The Supreme Court held that "mere silence" about the interrogation's scope did not constitute trickery and that "a valid waiver does not require that an individual be informed of all information 'useful' in making his decision or all information that 'might *** affec[t] his decision to confess.' [Citation.]" (*Spring*, 479 U.S. at 576, 93 L. Ed. 2d at 967, 107 S. Ct. at 859, quoting *Moran v. Burbine* (1986), 475 U.S. 412, 422, 89 L. Ed. 2d 410, 421, 106 S. Ct. 1135, 1141.) Accordingly, in *Spring*, "the additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." *Spring*, 479 U.S. at 577, 93 L. Ed. 2d at 967, 107 S. Ct. at 859.

Unlike the *Spring* defendant, the present defendant never received a *Miranda* warning to waive when being questioned about the second crime. Such *Miranda* warning as he did receive, in a session pertaining to the first crime only, had come two days earlier.

It is true that *Spring* has been interpreted by one court as meaning that police need not give a new *Miranda* warning each time they question a suspect in continuous custody about a different crime. (*United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117, 125-26.) However, that statement in *Espinoza* (which involved a waiver question, not a warning question) appears to be *dictum*. In any case, the defendants in both *Espinoza* and *Spring* received new *Miranda* warnings at the inceptions of the interrogation sessions

during which they confessed to their second crimes. The present defendant did not.

The mere fact that, under *Espinoza,* the present defendant's initial *Miranda* invocation as to his first crime *might* be considered to have carried over to his second interrogation session and to have made another *Miranda* warning at that session unnecessary could not mean that his presumed *Miranda* waiver at that session as to the first crime also applied to a *Miranda* right that had not yet been either extended or invoked as to the second crime. Otherwise, one would have to contend simultaneously that the single presumed waiver was immediately effective to cut off the initial *Miranda* invocation as to the first crime, but that it was temporarily ineffective to cut off that same "invocation" as to the second. Such temporary ineffectiveness would allow an *Espinoza*-inspired carryover of the initial *Miranda* warning and invocation to occur with respect to the second crime, followed instantly by the supposed waiver's *Spring*ing into effect so as to shield from challenge the deputy's direct inquiry in that same instant regarding the second crime. The fallacy of such tortured reasoning—obvious in its very statement—helps to refute any contention that *Spring* or the *dictum* in *Espinoza* governs the present cause. Besides, as Justice Clark cogently argues, an act that appears to invoke a right to counsel should be construed much more broadly than an act that seems to waive it.

Indeed, *Spring* supports rather than undermines the present defendant's case: The *Spring* Court specified that it was "not confronted with an affirmative misrepresentation by law enforcement officials as to the scope of the interrogation" and therefore did not reach "the question whether a waiver of *Miranda* rights would be valid in such a circumstance." (*Spring,* 479 U.S. at 576 n.8, 93 L. Ed. 2d at 967 n.8, 107 S. Ct. at 858 n.8.) In

the present cause, when giving his only *Miranda* warning, the deputy did affirmatively tell defendant that the interrogation would involve the first crime. This may not have been an actual misrepresentation, but, especially given the Supreme Court's limiting language in *Spring*, it is asking far too much to read into the present defendant's presumed *Miranda* waiver regarding the first crime a similar waiver regarding the second.

The fact is that defendant was never apprised of his *Miranda* rights at the time he was separately questioned about the second crime. Neither *Shriner* nor *Spring* warrants a holding that he waived or even could have waived those rights as to that crime freely and knowingly. For the foregoing reasons and those ably set forth by Justice Clark, I respectfully dissent.

JUSTICE CLARK joins in this dissent.