[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10912
Non-Argument Calendar

_____

D. C. Docket No. 07-00194-CR-KD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES REED ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 21, 2008)

Before CARNES, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Charles Reed Adams appeals his conviction for possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  Adams argues that the prosecutor's statements during closing argument amounted to prosecutorial misconduct requiring reversal.  Specifically, Adams claims that he was prejudiced by the prosecutor's comments that:  (1) Adams and Joseph Sykes were friends; (2) Sykes perjured himself in order to "help out his buddy"; and (3) if the jury believed Adams's defense, the prosecutor may have some Florida property to sell it.  For the reasons set forth more fully below, we affirm.

At trial, Officer Darrell Tucker testified for the government that, just before 8:00 p.m. on November 17, 2006, he and some other officers were responding to complaints at the Roger Williams Housing Project.  Adams started running as the police pulled into the parking lot.  As Officer Tucker chased him, he saw Adams reaching into his waistband or jacket pocket "to retrieve something to try to throw it down."  Officer Tucker stated Adams attempted to enter an apartment but then ran around the side of the apartment before finally complying by lying on the ground.  As Officer Tucker rolled Adams over, he noticed a weapon lying underneath Adams.[1]

For his defense that he did not possess the firearm, Adams relied solely upon

---

[1] No fingerprints were found on the gun, and the parties' stipulated that Adams was a convicted felon and that the firearm had affected interstate commerce.

the statements contained in the affidavit of Sykes.[2]  After he read the affidavit into evidence, Adams rested his case.  Adams argued in his closing statement that Sykes dropped the gun and that it was "bad luck [for Adams] to go down or to be put down on the ground where Joseph Sykes had dropped the gun."

During its rebuttal argument, the government stated:

how many of y'all are right now thinking, some guy running from the police turns the corner and just happens to fall right down on the gun that somebody left?  Just happened to fall in that same spot that somebody left a gun an hour and a half later.

Because if you recall[] in the affidavit, Mr. Sykes says – Mr. Sykes says I left the gun there at 9:30.  This all happen[s] at 8 o'clock at night.  And as [the government] said earlier, this man can't describe the gun in his affidavit.

You know what happened here.  This man can't possess a gun.  Mr. Sykes, can, I guess, possess a gun because he said here in his affidavit that he had a gun, walking through the project that night and dropped it on the ground.

What happened here folks is simply this, because he said in here, I was walking through the project and before the police could see me I dropped a gun.  Basically what happened here, you have a friend of Mr. Adams who drew up an affidavit . . .

---

[2]  The affidavit, which was read into evidence, provided, "My name is Joseph Sykes . . . .  On Friday[,] November 17, 2006[,] at approximately 9:30 p.m.[,] I was walking through the Roger Williams project.  I observed four police cars pulling into the parking lot where I live.  And[,] before they could see me, I took my pistol out of my pocket and dropped it on the ground and kept walking.  I intended to go back and get it after they left.  I would have told them it was mine – I would have told them that it was mine[,] but there was no one available to stay with they [sic] children.  Dated this 4th day of December, 2006.  Joseph Sykes.  Sworn before a notary."

Adams objected, stating: "it's fact not in evidence. No testimony," but the court overruled the objection. The government continued:

> Got a Buddy here of Mr. Adams who drew up this affidavit to help out a friend. That is what it amounts to. Couldn't get his fact[s] straight[], because he doesn't know the facts. He sat down and wrote out something or had somebody type it up for him and he just signed it.
>
> That's the defense folks. That's what it boils down to. Because you have got to believe, if you are a gambler, I'm not, but if you are a gambler, you have to believe that somebody running through the darkness of the neighborhood that night, being chased by the police, trying to get into an apartment, going around the corner, just happened to fall smack dab down on a gun that somebody else left. If you believe that, maybe there is some property down in Florida they might want to sell you.

The jury found Adams guilty, and the court sentenced him to 82 months' imprisonment.

We review a prosecutorial misconduct claim de novo because it is a mixed question of law and fact. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007). "Reversal on the basis of prosecutorial misconduct requires that the misconduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Weinstein, 762 F.2d 1522, 1542 (11th Cir. 1985) (quotation omitted). "When the record contains sufficient independent evidence of guilt, any error is harmless." Eckhardt, 466 F.3d at 947.

4

"To establish prosecutorial misconduct, '(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" Id. (citation omitted). "In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury." United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998).

To meet the substantial prejudice prong, the improper comments must have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (quotation omitted). We have stated that "[a] defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." Eckhardt, 466 F.3d at 947. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Eyster, 948 F.2d at 1207 (quotations and brackets omitted).

"[A] prejudicial remark may be rendered harmless by curative instructions to the jury." Weinstein, 762 F.2d at 1542; see also United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) (stating "[b]ecause statements and arguments of counsel are not evidence, improper statements can be rectified by the district

court's instruction to the jury that only the evidence in the case be considered");

Shriner v. Wainwright, 715 F.2d 1452, 1459 (11th Cir. 1983) (noting that "with a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks," and citing Grizzell v. Wainwright, 692 F.2d 722, 726-27 (11th Cir. 1982) for proposition that a jury is presumed to follow the jury's instructions as to evidence it may consider). "[C]onsiderable weight must be given to the trial court's assessment of the prejudicial effect of the remarks in question." Weinstein, 762 F.2d at 1542.

During closing arguments, "[a] prosecutor is forbidden to make improper suggestions, insinuations[,] and assertions calculated to mislead the jury and may not appeal to the jury's passion or prejudice." United States v. Rodriguez, 765 F.2d 1546, 1560 (11th Cir. 1985) (citation, quotations, and punctuation marks omitted). "While a prosecutor may not exceed the evidence in closing argument . . ., he may state conclusions drawn from the evidence[, and] . . . . there is no prohibition on 'colorful and perhaps flamboyant' remarks if they relate to the evidence adduced at trial." United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997). Moreover, a prosecutor may "assist the jury in analyzing, evaluating, and applying the evidence" and, therefore, may "urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Johns, 734 F.2d

657, 663 (11th Cir. 1984) (emphasis omitted); see also United States v. Nixon, 918 F.2d 895, 905 (11th Cir. 1990) (determining that the "prosecutor's statements were well within the government's discretion to urge a reasonable conclusion based on admitted evidence"). "[A]n attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence." Johns, 734 F.2d at 663.

The prosecutor's remarks during closing arguments were not improper because the remarks merely urged the jury to draw inferences and conclusions from the evidence. See Johns, 734 F.2d at 663. The jury was required to determine whether or not the information contained in Sykes's affidavit was truthful, and, therefore, whether to believe Adams's defense that it was "bad luck" that Adams happened to go down at the precise location where Sykes allegedly dropped the firearm.

However, given that Sykes's did not accurately depict some of the relevant facts in his affidavit, it was reasonable for the government to suggest that, perhaps, Sykes did not know some of those facts and was just trying to "cover" for a friend. The remarks were reasonable conclusions drawn from evidence adduced at trial and could "assist the jury in analyzing, evaluating, and applying the evidence."

See <u>Bailey</u>, 123 F.3d at 1400; <u>Johns</u>, 732 F.2d at 663. Moreover, it cannot be said that the isolated statements made only during the prosecutor's closing rebuttal, and after the court overruled Adams's objection, were "so pronounced and persistent that [the comments] permeate[d] the entire atmosphere at trial." See <u>Weinstein</u>, 762 F.2d at 1542.

Nonetheless, even if the prosecutor's statements were improper, any error by the district court in allowing those statements was rendered harmless by the court's curative instructions to the jury, which the court gave both at the start and end of the trial, warning that "anything the lawyers say is not in evidence." See <u>Weinstein</u>, 762 F.2d at 1542. Thus, the statements, if improper, were rectified by the court's instructions, and, in light of the instructions, there is nothing to suggest that the jury improperly relied on the prosecutor's statements. See <u>Smith</u>, 918 F.2d at 1562; <u>Shriner</u>, 715 F.2d at 1459.

In light of the foregoing, Adams's conviction is

**AFFIRMED.**